## HOWEY *v.* FISHER.

122    43
156   [2]295

[*]1. CONTRIBUTORY NEGLIGENCE—FORMER APPEAL—RES JUDICATA.

A holding, upon appeal of an action for personal injuries, that the circuit judge was in error in directing a verdict for defendant for the reason stated by him,—that there was no evidence that defendant was negligent,—does not establish plaintiff's right to go to the jury upon a subsequent trial, wherein she is claimed to have been guilty of contributory negligence, a point not raised on the original appeal.

2. SAME—ICY SIDEWALK—KNOWLEDGE OF DANGER.

Where plaintiff, instead of taking advantage of paths to and from the street which would enable pedestrians to avoid an icy place in the sidewalk, which plaintiff knew to be dangerous, attempted, though with caution, to walk across the ice, she was guilty of contributory negligence, precluding a recovery for injuries sustained in falling upon the ice.

[1] *Montgomery* v. *Meredith*, 17 Pa. St. 42; *Morrison* v. *Kelly*, 22 Ill. 610; *Mason* v. *City of Chicago*, 48 Ill. 420.

Error to Wayne; Donovan, J. Submitted May 10, 1899. Decided December 2, 1899.

Case by Margaret J. A. Howey against Maxwell M. Fisher for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Elliott G. Stevenson* and *Robert F. Eldredge*, for appellant.

*Frank T. Lodge*, for appellee.

MONTGOMERY, J. Plaintiff received injuries from stepping on an icy sidewalk. She brings this action against the defendant, who is the owner of a lot abutting upon the street, claiming that the eaves-trough upon his house situated on this lot had been for a considerable time out of repair, and that the formation of ice which caused the injury was the result of water carried from defendant's premises to the walk by reason of such defective eaves-trough. The case has once been before the court, and is found reported at 111 Mich. 422. It is contended by plaintiff's counsel that some of the questions raised by defendant are *res judicata* by the former decision, and it is said that it was held that the case was a proper one for the jury. A reference to the opinion of Mr. Justice MOORE on the former hearing will show that it was held — *First*, that, in taking a case from a jury, the circuit judge should give his reasons therefor (citing *Demill* v. *Moffat*, 45 Mich. 410 ); and, *second*, that the case should not have been withdrawn from the jury for the reason given by the trial judge, viz., that there was no evidence of want of repair of the eaves-trough or conductor. The holding related to the question of defendant's negligence on the record as it then stood, and does not preclude the defendant from contending on this record that the plaintiff was guilty of contributory negligence, or that the defendant was neither in possession of the premises nor under obligations to keep them in repair.

On the last trial the plaintiff testified that she went over the spot at about 5 o'clock that same evening, when it was not quite dark, and that the accident happened between 5 and 6; that she knew this place was icy, and had observed it when going into the house, and had taken particular caution.

"*Q.* Did you regard that as a dangerous place?

"*A.* Yes, sir.

"*Q.* Why?

"*A.* Because the ice was there.

"*Q.* How long had it been there?

"*A.* Almost all the time I had been on Duffield street.

"*Q.* You went by there frequently?

"*A.* Yes, sir.

"*Q.* For how long before you got hurt was that ice there, in such a condition you thought it dangerous?

"*A.* I could not say.

"*Q.* Was it there since Christmas?

"*A.* Yes, sir.    *    *    *

"*Q.* You say you were walking carefully when you went by there?

"*A.* Yes, sir.

"*Q.* Tell us how you walk when you walk carefully; what you did different from any ordinary walk.

"*A.* Well, I was watching the ice, and I was taking particular pains to get across it, and knew it was there, and not a very easy way to get around it, so I walked along.

"*Q.* No difficulty in going right out in the street from the door, was there?

"*A.* I do not know. I supposed sidewalks were supposed to be in repair, so that people could walk along them. The street down from the door was paved with cobblestones, and slanted down, and one was as liable to fall there. I did not notice that night, particularly, that there was ice there. Naturally there would be.

"*Q.* Was not that used constantly back and forward there beside that door,—milkmen and other folks going in and out?

"*A.* I presume they did.

"*Q.* No difficulty in going in and out there?

"*A.* Considerable snow.

"*Q.* No difficulty in going out where those stones were?

"*A.* No, sir; it was cleaned off.

"*Q.* Any difficulty in going out there where the livery barn was?

"*A.* No, sir. \* \* \*

"*Q.* Mr. Stevenson was asking you about the care you exercised in walking along. Just state what degree of care, if any, you did exercise in walking along that night.

"*A.* Well, I was going along the street, and I knew the ice was there, and I took care; and, had I known I was going to fall —

"*Mr. Stevenson:* Just tell what you were doing.

"*A.* I was taking care, — walking along and watching the ice, and taking care not to fall on it. It was a cement sidewalk, — artificial stone."

On re-cross-examination witness testified:

" *Q.* Do you mean this place where you fell was so slippery and icy you could not walk across it, walking carefully, without falling?

" *A.* Yes, sir. \* \* \*

" *Q.* What do you mean by 'walking carefully?'

" *A.* I was watching the ice, and taking particular pains not to fall.

" *Q.* Had been that way all winter?

" *A.* Yes, sir; of course, the ice cleaned off lots of times.

" *Q.* You knew it was there when you went over, and knew it was there when you came back?

" *A.* Yes, sir."

It appeared from other testimony in this case that there was a walk to the street leading from the side door of the house, and that there was a driveway from the street to the barn. One witness, called by plaintiff, testified, "If any one wanted to avoid the ice, they could step out off the walk to the street, go around the icy place, and back by the stable door to the brick barn." Plaintiff's counsel calls attention to the statements of this witness to the effect that sleighs and carriages run out of the barn, and, standing there, would prevent one from stepping off the sidewalk into the street. But this witness testified, as to the location of the rigs, that "they stood between the walk from the side door to the curb and the cobblestone way from the barn."

It is apparent from this testimony that the plaintiff knew of the risk of passing over this icy way, and assumed the risk of doing so, although there was a way to avoid this danger by stepping out into the street for a short distance. The precise danger was before her, and she had it in mind at the time. The case is quite differnet from those in which it has been held that possessing knowledge of a defect in a way will not preclude recovery, where it appears that the plaintiff was, notwithstanding, in the exercise of due care. *Graves* v. *City of Battle Creek*, 95 Mich. 266 (19 L. R. A. 641, 35 Am. St. Rep. 561); *Lowell* v. *Township of Watertown*, 58 Mich. 568; and cases of this class. In neither of these cases was the plaintiff, at the very moment of the accident, aware that, at the very place where he then was, he was encountering the danger or taking the risk of injury. In the present case there was nothing to distract plaintiff's attention. She could and did see the danger. She could have avoided it by going around the icy place. The case of *Black* v. *City of Manistee*, 107 Mich. 60, cannot be distinguished from this, in principle. See, also, *Grandorf* v. *Railway Co.*, 113 Mich. 496; *Cosner* v. *City of Centerville*, 90 Iowa, 33; *Ray* v. *City of Poplar Bluff*, 70 Mo. App. 252.

We think that a verdict should have been directed for the defendant, and, inasmuch as this conclusion is based on plaintiff's testimony, the judgment will be reversed, and no new trial ordered.

The other Justices concurred.