HODGE v. CITY OF ST. LOUIS.

1. TRIAL—ARGUMENT OF COUNSEL—CONDUCT OF WITNESS—PRIVILEGE—WAIVER.

 Waiver by plaintiff, in a personal injury case, of his privilege, after his physician has been called to the stand as a witness by the defendant, does not bar comment by counsel for plaintiff upon the conduct of the physician in making improper disclosures leading to his being called as a witness.

2. HIGHWAYS AND STREETS—MUNICIPAL CORPORATIONS—PERSONAL INJURY—DEFECTIVE SIDEWALK—CONTRIBUTORY NEGLIGENCE.

 Where a pedestrian walking on a sidewalk, the planks of which are loose and have been for two years to his knowledge, is thrown down and injured by a person walking on the other side of the walk stepping on the other end of a plank, and the pedestrian's attention is not diverted otherwise than by conversation with the person with whom he is walking and who steps upon the plank, his contributory negligence bars recovery. MONTGOMERY, J., CARPENTER, C. J., and MOORE, J., dissenting.

Error to Gratiot; Stone, J. Submitted April 19, 1906. (Docket No. 62.) Decided October 29, 1906.

Case by William A. Hodge against the city of St. Louis for personal injuries. There was judgment for plaintiff, and defendant brings error. Reversed.

*Kelly S. Searl* and *C. W. Giddings*, for appellant.

*T. W. Whitney* and *William A. Bahlke*, for appellee.

OSTRANDER, J.  Plaintiff has recovered a judgment of $1,700 for injuries received in consequence of falling, or being thrown down, upon a defective sidewalk.

The judgment and verdict must, in any event, be set aside for the intemperate language used by counsel for the plaintiff in his argument to the jury, persisted in after being rebuked by the court.  In view of the further conclusion arrived at, it is unnecessary to dwell upon the point further than to say that criticism is not made of proper argument addressed to the conduct of the physician, as affecting his credibility.  Waiver of privilege by plaintiff after the physician was produced in court, in the presence of the jury, as a witness for the defendant, would not bar comment of counsel for plaintiff, if, as was claimed by him, improper disclosures, made by the physician, led to his being summoned as a witness.  We do not, in saying this, assume that such disclosures were made.

That the sidewalk was defective, and had been for a considerable time, is not disputed.  The court said to the jury, and this portion of the charge is not challenged, that the fact was established.  The testimony of the plaintiff, to which alone reference will be made, was to the following effect:

1. The injury occurred in front of premises described as lot 1, in block 78, also known as the " Kennedy Lot," at about half past 6 o'clock in the evening of June 12, 1903.  Plaintiff was going west on Washington avenue, from his saloon to his home, carrying a gallon bottle of mineral water with one hand and his laundry and some meat with the other.

2. Plaintiff's son and a companion came from across the street and walked with plaintiff.  Plaintiff was on the inside and the boys on the outside or street side of the walk.  " I was walking real fast."  The boys stepped on

a board, the other end going up and catching plaintiff between the legs, throwing him down.

3. For two years plaintiff had gone over this walk six times every day, except that, upon some occasions, he took the other or north side of the street. The walk in front of the Kennedy lot had been in the same condition, substantially, as it was on the day of the injury, for two years.

"It was in such condition the planks would fly up if you stepped on the end of them. * * * It was in such condition that the nails stuck up through the nail holes in the boards in certain places and there was large holes in the boards so that the nails would not hold them down, and the stringers underneath were rotten. As you stepped on them, if you walked in the middle they would not tip up but if you got on to the edge they would fly up.

"*Q.* You knew that condition during that entire two years ?

"*A.* Yes, sir.

"*Q.* You are positive you are correct about it ?

"*A.* Yes, I think I am.

"*Q.* You saw that condition every time you went along there ?

"*A.* Yes, sir.

"*Q.* You could see it was in the condition you have described, the day you got hurt ?

"*A.* Yes, sir.

"*Q.* The boards were loose and would tip up if you stepped on the ends ?

"*A.* Yes, sir.

"*Q.* These big holes were there and the nails stuck up through ?

"*A.* Yes, sir.

"*Q.* Some of the nails sticking up ?

"*A.* Yes, sir.

"*Q.* And you could see the rotten condition of the stringers ?

"*A.* Yes, sir.

"*Q.* You knew that condition during the entire time you lived there ?

"*A.* Yes, sir.

"*Q.* This continued up to the time of the accident ?

"*A.* Yes, sir. I did not notice it when I went along

in the morning of that day. I walked over it the same as usual. The only change made in the condition of the walk from the time I moved there up to the time of the accident was, that once in a while there were new boards slipped in when they would get real bad. When some of these boards would get tipped up, new ones would be slipped in. With that exception there was no change. Just prior to the accident, I had noticed the boards would still tip up. Just a few days before it, I didn't know they would tip up. I could see the nails were sticking up. I knew the condition was there that I have described. I could not tell how long before June 12th, I had walked on the north side of Washington avenue. I might have gone there that month, and I might not. At the time of the accident it was a nice sunshiny day, and the street along there was dry, and I could have turned out at the driveway, between Long's and Kennedy's lot, and walked along the road to the crosswalk, if I had wanted to. I didn't do that. I could not say whether I walked all the way from Mill street to the Kennedy lot on the south side of Washington avenue or not at the time I was hurt. I don't remember. I sometimes crossed at different places. I could cross over at any one of the three blocks. There were sidewalks on both sides and crosswalks at every intersection. The two boys came up behind me, and caught up with me after I left Long's corner, and between there and the Kennedy lot. I think they were walking or running possibly. They caught up with me before I got to the driveway. I don't think they were running when I fell down, but think they were walking fast alongside of me, and one of them stepped on a board and tripped it up about 9 or 12 feet after I had left the driveway and while we were in front of the Kennedy lot. I know that I fell in front of the Kennedy lot because I could tell the sidewalk and the ditch. I saw them at the time. When I went on there I was busy in conversation with the boys. I was tripped up. When I got up I knew I was in front of Kennedy's. When the boys came up beside me I knew where I was and knew at the time that I was some place in front of George Long's, and I then knew that the next premises west of George Long's was the Kennedy property.

"*Q.* You knew this old, rickety sidewalk would be the next sidewalk you would encounter after you passed this?

"*A.* It didn't enter my mind then.

"*Q.* You say it didn't enter your mind it was?

"*A.* No, sir.

"*Q.* You knew when you started for home you would have to pass that piece of walk?

"*A.* That was the way I always went.

"*Q.* You knew it was there?

"*A.* Yes, sir. * * *

"*Q.* At the time you fell it was broad daylight, was it not?

"*A.* Yes, sir.

"*Q.* There was nothing to prevent you from seeing, if you looked ahead of you, this walk in question at the time you fell?

"*A.* No, sir.

"*Q.* There was nothing to prevent you seeing the bad place when you entered upon this walk if you had been looking for them?

"*A.* I don't know—

"*Q.* I asked you if there was anything to prevent you from having seen them if you had looked?

"*A.* I suppose if I had my mind on the walk I would have noticed that when I came to it.

"*Q.* Was there anything there to prevent you from seeing the walk?

"*A.* No, sir; the street is open right along. * * * At the point where the driveway enters there is a wagon track, and there is a little depression between the street and the sidewalk where this driveway crosses, but there is no difficulty in coming into the driveway. You could walk in there easily. At the time when I reached this driveway coming from the east when I was hurt I could have turned out at this driveway by walking about 12 feet to the north and then have gone down the street to the west until I reached the crosswalk. It was a level road and not muddy, and if I had taken that course and had gone to the crosswalk I could then have gone 12 feet south and passed on to my home."

At the conclusion of plaintiff's case, and again when proofs were closed, counsel for defendant moved for a directed verdict for defendant, upon the ground that plaintiff had shown himself to have been guilty of negligence precluding a recovery. It is the law of this State, undoubtedly, that it is not negligence as matter of law for a

146 MICH.—12.

pedestrian to make use of a walk he knows to be out of repair. And whether the defect is or is not known, a reasonable diverting of attention from the known or the actual and visible condition of the way, at the moment of injury, may require the question of plaintiff's negligence to be submitted to the jury. This court has, however, never held that where the unsafe condition of the way is well known, and the circumstances relied upon as attracting attention from its condition and from the danger attending passage are circumstances which themselves, to the knowledge and within the experience of the injured person, create or make threatening the danger, the testimony of the injured person that he did not think or did not have his danger in mind, raises a question of fact as to his negligence. The facts just stated appear here. They serve to distinguish this case from most, and, perhaps, from all, cases of injuries from defective ways heretofore presented to this court. This is not the case of one having previous knowledge of unsafe conditions who attempts prudently, in view of those conditions, to make a passage. The injury occurred in broad daylight, on a piece of walk which was for a considerable distance, and in the same way, defective. The defect was not a single hole, or a broken plank. It was a defect to be regarded as eminently dangerous as plaintiff used the walk. Plaintiff's knowledge was:

"As you stepped on them (the boards in the walk), if you walked in the middle they would not tip up, but, if you got onto the edge, they would fly up."

It is not claimed that the situation increased the care exercised by plaintiff. On the contrary, "I was walking real fast," on the ends of the boards, and a boy was walking on the other ends. The obvious, and, according to his testimony, the usual, if not inevitable, thing occurred. The ends of the boards flew up. On one of them he tripped, fell, and was injured. His attention was not reasonably diverted from existing conditions and from

the obvious danger. His own conduct created his danger; did not merely lead him into, or attract attention from, an existing danger. It was negligence not to notice and to realize the obvious danger. The circumstances negative the exercise of due care. The case requires the application of the rule that when it clearly appears from the undisputed facts, judged in the light of that common knowledge and experience of which courts are bound to take notice, that a party has not exercised such care as men of common prudence usually exercise in positions of like exposure and danger, or when the evidence is of such conclusive character that the court would be compelled to set aside a verdict in opposition to it, the case may properly be withdrawn from the jury. A verdict for defendant should have been directed by the court.

The judgment is reversed, and a new trial granted.

MCALVAY, GRANT, BLAIR, and HOOKER, JJ., concurred with OSTRANDER, J.

MONTGOMERY, J. ( *dissenting* ). The testimony tends to show that, while plaintiff had previous knowledge of the fact that the walk in question was in bad repair, as he approached the bad strip of walk he was overtaken by two boys. He continued on his way conversing with them, and when he had passed onto the walk in front of the Kennedy property (the defective walk), 8 to 10 feet, one of the boys stepped on the end of a plank, the other end of which flew up and tripped plaintiff. The plaintiff testifies in substance that the unsafe condition of the sidewalk did not enter his mind at the time. It is not negligence, as a matter of law, for a pedestrian to make use of a walk he may know to be out of repair. *Harris* v. *Township of Clinton*, 64 Mich. 447. If, however, he proceeds upon the way, and suffers an avoidable injury from a defect known to him and present in his mind at the time all would agree that his contributory negligence should bar recovery. *Grandorf* v. *Railway Co.*, 113 Mich. 496. Where, however, the defective condition of

the walk is not in the mind of the traveler at the time, and his attention is reasonably attracted elsewhere, it is not held contributory negligence, as matter of law. *Dundas* v. *City of Lansing*, 75 Mich. 499 (5 L. R. A. 143); *Urtel* v. *City of Flint*, 122 Mich. 65; *Herring* v. *City of St. Joseph*, 137 Mich. 480; *George* v. *City of Haverhill*, 110 Mass. 506; *Crites* v. *City of New Richmond*, 98 Wis. 55. The *Crites Case* has been twice cited by this court with approval, viz.: *Urtel* v. *City of Flint*, and *Herring* v. *City of St. Joseph*. In the *Crites Case* the excuse for failure to attend to a known danger was the fact that the plaintiff's attention was diverted by a passing friend. In the present case the plaintiff's attention was engrossed by his conversation with companions. No distinction in principle can be noted. We think the question of plaintiff's contributory negligence one for the jury. Upon the other question we agree with the main opinion.

CARPENTER, C. J., and MOORE, J., concurred with MONTGOMERY, J.