## SARGEANT *v.* CITY OF DETROIT.

HIGHWAYS AND STREETS—MUNICIPAL CORPORATIONS — DEFECTIVE
SIDEWALKS—PERSONAL INJURIES — CONTRIBUTORY NEGLIGENCE.
In an action for personal injuries caused by a defective side-
walk, it appearing that plaintiff knew of its defective condi-
tion, and could have avoided the danger, *held,* by an equally
divided court, that plaintiff was guilty, as a matter of law,
of contributory negligence.

Error to Wayne; Murphy, J.   Submitted October 12,
1908.   (Docket No. 20.)   Decided April 24, 1909.

Case by Mary H. Sargeant against the city of Detroit
for personal injuries.   There was judgment for defend-
ant on a verdict directed by the court, and plaintiff brings
error.   Affirmed by an equally divided court.

*Alex. J. Groesbeck* and *Guy A. Miller,* for appellant.

*Edmund Atkinson* (*P. J. M. Hally,* of counsel), for
appellee.

MOORE, J.   Plaintiff sued to recover for injuries sus-
tained October 15, 1904, on a defective sidewalk in front
of a vacant lot on Delaware avenue in Detroit, by reason
of being tripped and thrown by a plank over which plain-
tiff and a companion, walking side by side, were about
to pass.   The circuit judge was of the opinion that the
case was governed by the cases of *Irion* v. *City of Sagi-
naw,* 120 Mich. 295, and *Hodge* v. *City of St. Louis,*
146 Mich. 173, and directed a verdict in favor of defend-
ant.   The case is brought here by appeal.

The plaintiff was 61 years of age.   The injury occurred
about 6 o'clock in the evening.   The plaintiff testified
upon the direct examination:

"We got off from the car and started west, and it was exceedingly dark. I had known and knew very well the condition of the sidewalk, and Mr. Bornman did not quite as well; but we walked moderately because I knew the sidewalk was very defective, old, and loose boards, and as I did not wish to make a spectacle of myself in tumbling down, I wished to get up there without it, and we walked slowly along, or reasonably slowly along, until we suddenly came to a stop. Mr. Bornman stepped—he was on the inside of the walk and stepped on a board, and it flew up and caught me and threw me down. I saw it all in an instant, but I could not save myself. And it was quite dark. The street was not lighted directly. There was little light on the street except from the houses, and they were far apart. Mr. Bornman says: 'What has happened?' And I gave him no answer, and by the time he collected himself, and I had a little, he got to me and began to try to help me up, and I said: 'Wait a minute. I am in pain. I cannot get up just now.' I did get up, perhaps in the course of two minutes, with his assistance, and he said: 'You cannot go home, can you?' I says: 'Yes, if you walk very slowly.' I was half a block or less than half a block from home, perhaps; but the sidewalk all the way from my house I knew perfectly. I had marked each place as I went down town, remembering it, thinking perhaps I might avoid it coming back."

Upon cross-examination she testified:

"*Q.* You said you used a good deal of care in going along?

"*A.* Of course, I used care.

"*Q.* For the reason you didn't want to fall?

"*A.* I didn't want to fall.

"*Q.* I suppose you used an extraordinary care in going along?

"*A.* I did.

"*Q.* You knew you had to do this in going over this walk?

"*A.* Of course, I knew it.

"*Q.* And that was so with this walk in front of the vacant lot?

"*A.* It was.

"*Q.* You had to be careful of the whole walk in front of that vacant lot?

"*A.* Looking all the time, to avoid the worse places, and going on to the places which I knew would hold me up.

"*Q.* You were afraid of the whole walk in front of that vacant lot?

"*A.* I was of the whole walk from my house to Woodward avenue, and that included 80 feet.    *   *   *

"*Q.* Did you use care going along there at night?

"*A.* Extra care, walking slowly, certainly, very seldom in the evening.  I didn't go out there in the evening more than four times in the year.  I had no occasion to go out in the evening.

"*Q.* At night you had to use extra care?

"*A.* I did use extra care, because I thought it was not very safe.

"*Q.* Because you thought it was dangerous?

"*A.* I knew it was dangerous.  I didn't think it was. I knew it.

"*Q.* And at night you had to use extra care?

"*A.* Yes, sir; you had.

"*Q.* You didn't want to trip on any loose boards or fall in any hole?

"*A.* I didn't; I didn't want to fall in any holes.

"*Q.* On account of the knowledge you had of the walk, you used this extra care?

"*A.* Yes, sir."

The cross-examination was very long, and she repeated over and over again that she knew the walk was defective, that she had that fact in mind, and for that reason walked slowly, using great care.

There was testimony of witnesses that at the time of the accident they used the walk, and that the neighbors used it instead of walking on the grass or in the street. There was also testimony to the effect that before the plaintiff was hurt the building of a house was commenced on the lots before which this sidewalk was located, and that earth from the excavation was thrown clear to the walk, and that outside of the walk there were bricks piled, and that the limbs of the trees between the walk and the curb hung very low.

We think an examination of the cases referred to by the learned trial judge will show they are easily dis-

tinguishable from the case at bar. The case before us is within the line of cases of which *Germaine* v. *City of Muskegon*, 105 Mich. 213, is a type, in which case Justice GRANT, among other statements, speaking for the court, said:

"It was not error to instruct the jury, under the facts of this case, that the plaintiff had a right to travel on the sidewalk, and the mere fact that he did so travel, even with the knowledge that there was a hole in the walk, was of itself no evidence of negligence on his part, unless the place was so dangerous that a prudent man would not have traveled on the walk. Sidewalks are intended for the use of pedestrians, and they are entitled to walk upon them, and are entitled to do so even if they have knowledge of a defect like the one in question."

See, also, *Lowell* v. *Township of Watertown*, 58 Mich. 568; *Schwingschlegl* v. *City of Monroe*, 113 Mich. 683; *Vergin* v. *City of Saginaw*, 125 Mich. 499; *Belyea* v. *City of Port Huron*, 136 Mich. 504; *Oesterreich* v. *City of Detroit*, 137 Mich. 415; *Barnes* v. *West Bay City*, 138 Mich. 93; *Vander Velde* v. *Village of Le Roy*, 140 Mich. 359; *Lewis* v. *City of Marshall*, 146 Mich. 389.

We do not think it can be said as a matter of law that plaintiff was guilty of such negligence as to preclude her recovery. The case should have been submitted to the jury under proper instructions.

Judgment should be reversed.

BLAIR, C. J., and MONTGOMERY and BROOKE, JJ., concurred with MOORE, J.

GRANT, J. I cannot concur in the opinion of my Brother MOORE. I think this case falls directly within *Hodge* v. *City of St. Louis*, 146 Mich. 173, and *Irion* v. *City of Saginaw*, 120 Mich. 295. The facts in this case are so nearly parallel to the facts in those cases that I am unable to distinguish them. The same principle, also, is contained in *Grandorf* v. *Railway Co.*, 113 Mich. 496;

*Black* v. *City of Manistee,* 107 Mich. 60; *Howey* v. *Fisher,* 122 Mich. 43. The condition of this sidewalk was well known to the plaintiff. She lived nearby and passed over it frequently. She usually passed in the daytime. She testified that it was dark on the evening in question, the accident happening between 6 and half past 6 on October 15th. Her companion testified that the light was sufficient to see the sidewalk. She testified that she knew the danger in walking, as she did, beside her companion. She knew that stepping on the outer end of the plank was liable to raise the other end. She had the situation fully in mind. Her attention was distracted by nothing. She testified:

" The only safe place was to walk right on the center, so that neither end would fly up. If you went on the other edge there the boards would go down and fly up and be more dangerous. I knew it was dangerous. I didn't think it was. I knew it. The boards would shake and give somewhat, so I always walked right in the middle of the walk if I could. I always took the chance in walking in the middle of the walk, hoping to get over it safely."

With this knowledge it was clearly her duty not to walk in this dangerous manner. She could have and should have walked in the center behind or in front of her companion. Besides, she could have stepped off the walk four or five feet across the space between the walk and the curb onto the paved street and walked around this dangerous place, or she could have crossed the street to the sidewalk on the other side. Her companion, who lived on the same street, testified that he seldom walked on the south side of the street, but usually on the north side. She was 61 years of age, very large, and knew that she should take extraordinary care in avoiding so dangerous a place. While it is true that the existence of such a dangerous sidewalk is discreditable to the city, its notoriously bad condition furnishes all the more reason for pedestrians to avoid it. One who deliberately walks in an unsafe place, when with but little inconvenience he can walk in a safe

place, must abide by the consequences of his own negligent act.

I think the court correctly directed a verdict for the defendant.

OSTRANDER, HOOKER, and MCALVAY, JJ., concurred with GRANT, J.