HUNT v. TOWNSHIP OF DOUGLASS.

1. HIGHWAYS—MUNICIPAL CORPORATIONS—DITCHES—TOWNSHIPS—
   NEGLIGENCE.
   Evidence tending to show that plaintiff fell into an open, un-
   guarded ditch, along the side of the highway, in the dark,
   and that the highway commissioner who dug the ditch had
   failed to erect any barriers to protect the public, is sufficient
   to support a verdict that defendant township was negligent.[1]

2. SAME—CONTRIBUTORY NEGLIGENCE.
   And a showing that plaintiff who knew of the ditch and after
   being blinded or bewildered by a flash of lightning, but not
   realizing that she had gone out of her way, fell into the
   ditch, presents a question for the jury as to her contributory
   negligence.[2]

3. SAME—TRIAL—CHARGE.
   But defendant was entitled to have its request submitted to
   the jury, to the effect that if she realized she had lost her
   way, and continued on her way blindly, she was guilty of
   contributory negligence.

Error to Montcalm; Davis, J. Submitted January 6,
1911. (Docket No. 45.) Decided March 31, 1911.

Case by Rizpah A. Hunt against the township of Doug-
lass for personal injuries. Judgment for plaintiff. De-
fendant brings error. Reversed.

*George E. Nichols* and *Frank A. Miller*, for appel-
lant.

*R. A. Hawley*, for appellee.

STONE, J. This is an action on the case against the
township to recover damages for a personal injury sus-

_____

[1]As to liability of municipal corporation for defects or obstruc-
tions in streets, see note in 20 L. R. A. (N. S.) 513.

[2]For contributory negligence as affecting liability of municipal
corporations for defects or obstructions, see note in 21 L. R. A. (N.
S.) 614.

tained by the plaintiff—a married woman, about 55 years of age—by falling into a ditch or drain in one of the public highways of said township on the night of August 14, 1909. At that time the plaintiff resided with her husband on the S. E. ¼ of the N. E. ¼ of section 10 in said township, and had lived there for many years. Her son-in-law, Harvey Lee, lived, as he had for some time prior thereto, on the N. E. ¼ of the N. E. ¼ of the same section, and about one-quarter of a mile north of plaintiff's home. The highway between the two places runs north and south, and has been a public highway, under the supervision of the township authorities, for more than 25 years. In August, 1908, the highway commissioner, for the purpose of improving the highway, constructed a drain or ditch along the east side of the highway opposite Mr. Lee's house, and continuing north of his house several rods where it crossed the road. The dimensions of this drain in front of Mr. Lee's house, as given by the plaintiff's husband, were as follows: Width on top 11 feet 10 inches, bottom 4 to 5 feet; depth in deepest place 6 feet 6 inches. Mr. Lee's house was 71 feet west from the drain or ditch and stood on a rise of ground 2 or 3 feet higher than the wrought portion of the highway. A path led from the front of the house down to the road, and on each side of the path, a short distance from the house, were lilac bushes. There was no fence between the house and the highway. Some two or three rods south of the house, and on the west side of the road, there was a large maple tree, and just opposite this tree on the bank of the ditch was a large white rock. There were no barriers or fences between the ditch and the highway at the time of the injury. The plaintiff was familiar with the situation as above outlined, and with the location of the ditch, and had been there many times, both in the evening and day, on visits to his daughter, Mrs. Lee.

On the evening in question, plaintiff made a visit to her daughter, arriving at the house about half past 6 o'clock, remaining there until about half past 8. Upon this

branch of the case we quote from the plaintiff's testimony on direct examination:

"Q. When you went there, what was the condition of the weather?

"A. It was cloudy; not as cloudy as it was when I started from there.   It wasn't dark when I got there, but when I started away it was.   It was some cloudy when I went there, not so much as it was later on.   While I was there, it rained about 15 minutes.   Finally, I left there about 8:30.   It was dark when I left there.   The lamps had been lighted in the house about half an hour.   It was dark and cloudy when I left there.   I came out of the light room.   There are two lilac bushes, one on the left side and one on the right side.   I got off my path and run into that lilac bush.   The lilac bush was on the left-hand side of the road—of the path.   I got around it. Just then there was such a great flash of lightning—it was almost round, great, large flash that bewildered me, so I didn't know just where I was going.   I didn't know until I went into the ditch head first.

"Q. How far had you gone after the flash of lightning, before you went into the ditch?

"A. It couldn't have been over four or five steps.   It was dark there.   The room being light, I couldn't see plain at all after I got out of the dark, and I think it was from the effects of the room being light.

"Q. At the time after you got out of the lilac bush, and this flash of lightning occurred, did you realize at that time that you were confused or bewildered?

"A. I didn't.   I was attempting to go on the right-hand side of the track towards the maple tree.   I tried to see the maple tree.   It was so dark I couldn't see it; just dazzled me so I couldn't see anything after the lightning came.   It blinded me so, I didn't have in mind the stone on the east side of the road.   I didn't see the stone.   I was on the lookout for the ditch, for I always went on the right-hand side of the road when I started for home.   I didn't see the ditch, or know I was anywhere near it until I went into it.

"Q. You knew there was a ditch there?

"A. I knew the ditch was here, of course.

"Q. Did you know of the exact location of the ditch?

"A. Why, I did until that night.   It was so dark I couldn't see.

"*Q*. I say, did you know of the exact location of the ditch? Did you ever notice it distinctly, locate the exact location of it?

"*A*. No; I never did.

"*Q*. When the flash of lightning occurred, in fact, from the time you ran into the bush there, did you have in mind the exact location of the ditch?

"*A*. No; I didn't. I wasn't going very fast, because it was so dark I couldn't see. When I started out, I couldn't see the path.

"*Q*. How were you going, feeling your way along, or otherwise?

"*A*. I couldn't tell you just exactly whether I was or not. I was going slowly, so as to get into the road. I went into the ditch headlong. I struck in the bottom of it on the left shoulder and side of my head. It stunned me."

In our view of the case, the subsequent cross and redirect examination of the plaintiff upon the subject of her confused condition became important. On cross-examination she testified:

"*Q*. When you got into this lilac bush, as your son-in-law said, you got tangled up in it?.

"*A*. Yes, sir.

"*Q*. In getting out of that, and away from it, you lost the sense of direction, did you?

"*A*. I did.

"*Q*. So you couldn't tell where you were going?

"*A*. I could not tell where I was going.

"*Q*. About the time you got away from the lilac bush, then came this blinding flash of lightning?

"*A*. Blinding flash of lightning. It was in the south, but it was an awful large sheet of lightning.

"*Q*. That, I suppose, blinded you, and confused you again?

"*A*. It did.

"*Q*. So for those reasons, on account of the lilac bush and the lightning, etc., you entirely lost all sense of direction and became confused?

"*A*. Yes, sir.

"*Q*. And didn't know where you were going?

"*A*. I didn't know where I was going.

"*Q*. It seems to you you went four or five steps and fell into the ditch?

"*A.* I couldn't have went over four or five steps.

"*Q.* What do you mean, from the time you got out of the lilac bush ?

"*A.* Yes, sir; or from the time I got into the road.

"*Q.* Did you know when you struck the highway; that is, the worked portion of the road from the dirt ?

"*A.* I didn't sense anything after I got out of the lilac bush until I struck the bottom of the ditch.

"*Q.* You didn't stop and try to locate where you were ?

"*A.* No, sir.

"*Q.* Just stumbled along ?

"*A.* Stumbled along.

"*Q.* Confused, not knowing what you were doing ?

"*A.* Confused, not knowing what I was doing.

"*Q.* That condition of mind was brought about by the trouble you had with the lilac bush and the flash of lightning ?

"*A.* Yes, sir.

"*Q.* You knew, didn't you, that there was a strip of sod between the traveled track and the ditch. You have seen that a good many times?

"*A.* Why, I have, but it was all—just had been—all dry and burned kind of.

"*Q.* It wouldn't have made any difference probably in your condition of mind if the grass had been a foot deep ?

"*A.* I presume not. I was so confused I didn't know which way I was going.

"*Q.* So it didn't make any difference so far as your condition of mind was concerned exactly where the ditch or anything else was. You kept going and thought you were going right.

"*A.* I did. I thought I was going right.

"*Q.* I understand you, before that time you were perfectly familiar with the situation; had traveled it both night and day ?

"*A.* Yes, sir.

"*Q.* Without any trouble in any way, shape, or manner ?

"*A.* Yes, sir; a good many times.

"*Q.* The first thing that you came to sense or realization was when you found yourself in the bottom of the ditch ?

"*A.* Yes, sir.

"*Q.* That space of time intervening from the time that you ran into the lilac bush until you struck the bottom of

the ditch is a matter of entire confusion in your mind?

"*A.* Yes, sir; it was.

"*Q.* It is now wholly indistinct as to how it happened; how it occurred?

"*A.* Yes, sir.

"*Q.* You couldn't tell anything about it?

"*A.* I couldn't tell you anything about how it happened. When my son-in-law came there, I couldn't see him as he approached. I didn't see him when he came into the ditch. He called to me to know where I was, and he kept calling, and I kept telling where I was until he got to me. I was in the ditch. I fell in. I felt my foot slip a little. I thought I was going right. My foot slipped, and I just supposed I stepped outside of the track and was slipping back in. Instead of my slipping back into the road, I went right off into the ditch.

"*Q.* Did you try to gather yourself when your foot slipped?

"*A.* No; I didn't know what—

"*Q.* Didn't know what it was?

"*A.* No; I didn't know what it was, I couldn't—

"*Q.* Then, as a matter of fact, after you ran into the lilac bush, if you were that confused that you didn't know what you were doing, of course, you didn't attempt to locate any landmark; locate the maple tree or stone or anything?

"*A.* I was thinking of the right way of the road. I was so confused with lightning—if any one saw lightning of that kind that bewildered them they would have some idea of what it was. It was so sharp it blinded me.

"*Q.* And so, on account of your confused condition of mind the lightning, and the difficulty with the lilac bush, you were not in a condition of mind, and you didn't attempt, to locate any of these landmarks?

"*A.* No, sir."

Redirect examination:

"*Q.* When you got out of the lilac bush that night did you realize or appreciate the fact that you were confused or bewildered to any extent?

"*A.* I realized it; yes, sir.

"*Q.* When you got out, or since that time, when was it you first realized it?

"*A.* Since I got out.

"*Q.* Did you realize it before you got into the ditch that night?

"*A.* No.

"*Q.* That you were bewildered or that you had lost your way, or that you were confused?

"*A.* I was confused and bewildered. I didn't know where I was going, or like that.

"*Q.* Did I understand you, you attempted to see the maple tree, to discover that?

"*A.* The tree I kind of thought—because if I would go along on the right-hand side, and that was on the right-hand side of the road, and realize how—

"*Q.* I asked you if you attempted to discover it after you got out of the lilac bush?

"*A.* No; I didn't attempt it then.    *   *   *

"*Q* You used the word 'landmarks.' I don't know whether the witness understood it or not. She testified on the direct examination she tried to see the maple tree and couldn't see it. I want to know when it was.

"*A.* It was after I got out of the lilac bush.

"*Q.* That was after you got out of the lilac bush?

"*A.* It was after I got out of the lilac bush that I tried to see where the maple tree was.

"*Q.* Could you see it?

"*A.* No, sir; I couldn't.

"*Q.* Do you remember whether you tried to see where the maple tree was after that flash of lightning?

"*A.* No; I was so confused I didn't know anything after I got tangled from being up in the lilac bush.

"*Q.* You didn't know anything; did I understand you you tried to see the maple tree after you got out of the lilac bush?

"*A.* Yes; but after the flash of lightning came that bewildered me so I didn't know where I was going.

"*Q.* Now, did you have any idea at that time, did you realize at that time that you didn't know where you were going, or have you discovered that since?

"*A.* I have discovered it since. I didn't realize at that time that I didn't know where I was going.

"*Q.* Where did you think you were going at that time; that is, on which side of the road?

"*A.* On the right-hand side; that would be on the west side of the road.

"*Q.* Did you realize at that time that you had lost your way?

165 MICH.—13.

"*A.* Why, yes.

"*Q.* Or that you had lost your sense of direction. Did you realize at that time?

"*A.* No; I didn't realize it at all.

"*Q.* When did you first come to that conclusion, that you must have lost your sense of direction?

"*A.* After I got into the ditch, or else that made me notice.

"*Q.* Did you discover that before? Did you realize it before the time you got into the ditch that you had strayed from where you supposed you were?

"*A.* No; I didn't."

Recross-examination:

"*Q.* When did you first come to the conclusion that you didn't know where you were going, when you left the lilac bush?

"*A.* After I got in the ditch.

"*Q.* You testified in answer to my question, that you were so confused when you left, got loose, from the lilac bush, that you didn't realize where you were going?

"*A.* I didn't.

"*Q.* You didn't realize where you were going; so you didn't think anything about where you were going, did you?

"*A.* I don't know as I thought anything about only that I had started for home; that is all.

"*Q.* Now, this is all there is to the story, isn't it; you came out of the house, down the steps, felt your way down?

"*A.* I felt my way down the steps.

"*Q.* Your vision was dazzled somewhat, blinded by coming out of a light room into a dark night?

"*A.* Yes, sir.

"*Q.* Consequently it was that dark, although the window curtains were up, you were so affected you had to feel your way down the steps?

"*A.* Yes, sir.

"*Q.* Then, after disentangling yourself from that, you became confused as to the direction? What you were doing?

"*A.* Yes, sir.

"*Q.* Then that was immediately followed by this flash of lightning?

"*A.* Yes, sir.

"*Q.* You became so confused then you didn't know where you were going?

"*A.* No, sir.

"*Q.* Now, you didn't think anything about it one way or the other, did you, you were just starting away?

"*A.* After I got tangled up in the bush and kind of got started out, I thought of going into the road of the tree along there, but I didn't—flashed up and bewildered me so I didn't know where I was going.

"*Q.* Now you have got it right. You didn't know where you were going. You didn't think anything about it, either, where you were going, did you?

"*A.* After I got out from that lilac bush, I don't just know how I was thinking what—my way. Just after I got out of the bush this lightning came and bewildered me so I couldn't—

"*Q.* You were still in your son-in-law's yard at the time of the lightning flash, weren't you?

"*A.* I don't really know whether I was—just got out of the bush. I can't tell just how far the bush is from the road.

"*Q.* It is quite a little ways. I don't know just how far. You don't know whether you were in your son-in-law's yard or not?

"*A.* I think I must have been close to it, if not quite.

"*Q.* In the yard?

"*A.* Yes, sir; I felt after I got out I was going right."

Redirect examination:

"*Q.* When did you first realize that you were a little confused as to your sense of direction, or that you were out of the way at all?

"*A.* It was when the lightning bewildered me, you know.

"*Q.* Did you realize at that time you had lost your way, or at some other time. When was it you first realized you had strayed away from the west side of the road?

"*A.* When I fell in the ditch.

"*Q.* Up until the time you felt yourself slipping and going into the ditch, where did you suppose you were?

"*A.* I supposed that I had just stepped simply outside of the road, and I was coming all right.

"*Q.* On which side of the road did you think?

"*A.* On the right-hand side. I always went on that side.

"*Q.* When you say you did suppose you were just slipping back in the road, what do you mean by that? Where had you slipped from?

"*A.* There is a kind of a little incline up there. I thought I had got up on there.

"*Q.* Where is that incline with reference to the maple tree?

"*A.* About a quarter of the way between the tree and where that lilac bush was. When I stepped on there, my foot slipped, and I supposed I was going back in the road, just stepped outside and was going back in the road. Of course, I couldn't save myself at all. I don't know where I was going. When I slipped back, I just went right on in. I didn't stop at all.

"*Q.* Up to the time you landed at the bottom of the ditch, where did you suppose you were?

"*A.* I supposed I was in the road near the maple tree."

Recross-examination:

"*Q.* As a matter of fact, you know when you struck. I understand you, you know when you ran into this lilac bush, you were on the north side of the path?

"*A.* Yes, sir.

"*Q.* Now the maple tree is, according to the statement of your husband, 35 feet south of the path?

"*A.* I should think it was. I don't know.

"*Q.* And the lilac bush is about eight feet north of the path, according to his statement?

"*A.* I couldn't tell you; something like that.

"*Q.* He so states, and I don't dispute it. So you would have to travel a distance of 43 feet to get to the maple tree?

"*A.* I couldn't tell you.

"*Q.* You thought you had taken. You don't believe now you had taken only four or five steps before you were in the ditch?

"*A.* Four or five steps before I was in the ditch.

"*Q.* You couldn't possibly have gone that distance in four or five steps, could you, from where you were to the tree?

"*A.* I was making for that way.

"*Q.* Now, as a matter of fact, isn't it true, when you got out of that lilac bush, and was blinded by this flash of lightning, that your first statement here you lost your

sense of direction and was confused and bewildered, was true?

"*A.* After I got out of the lilac bush, I had started.   I supposed I was on the right-hand side.   I always go on the right-hand side of the road, west side of the road, along where that maple tree is.   I supposed I was going that way.

"*Q.* As a matter of fact, did you think anything about it at all?

"*A.* I did."

From the foregoing lengthy excerpts from the testimony of the plaintiff, it will be seen that the question whether she was conscious of her confused condition before she fell into the ditch was by counsel deemed an important one.   At the close of the plaintiff's case, counsel for defendant moved for a directed verdict in its favor, which was denied; the court holding that under all the circumstances and conditions as they appeared in the evidence it became a question of fact for the consideration of the jury whether it was the duty of the defendant to have erected barriers to the ditch, in order to make the highway reasonably safe and fit for public travel; and that the questions of contributory negligence and proximate cause were also for the jury.   The case was submitted to the jury under a very full charge, and they found a verdict for the plaintiff.

The defendant has alleged error in the charge of the court.   We have examined the record with much care, and are of opinion that the court did not err in denying defendant's motion for a directed verdict.   One assignment of error urged by appellant is the refusal of the court to give the defendant's tenth request to charge.   It was as follows:

" If you find that the plaintiff realized that she was confused and bewildered, and did not know where she was going, continued blindly on after she had become disentangled from the lilac bush upon the premises of Mr. Lee, then I charge you, as a matter of law, that she would be guilty of contributory negligence, and not entitled to re-

cover in this action, and your verdict will be for the defendant, no cause of action."

Upon this branch of the case counsel for the plaintiff in his brief says:

"Upon this question I think that if it had appeared conclusively and indisputably from the testimony of the plaintiff that after getting out of the lilac bush, or after the flash of lightning of which she testifies, and in view of her knowledge of the location of the ditch in question, she had continued to walk along in full realization of the fact that she had lost her way and her sense of direction, and without making any attempt to locate the ditch or any landmarks whereby she might guide her course, that she could justly be said to have assumed the risk, and to have taken her chances of the outcome, or to have been guilty of negligence that contributed to the result."

But counsel contends that it does not so appear. In view of the testimony of plaintiff's son-in-law that she told him that she got confused and frightened and lost her way, and in view of her own testimony that she became confused and lost all sense of direction, and stumbled along, "confused, not knowing what I was doing," although later qualified in her redirect examination, this question became one of fact for the consideration of the jury under a proper direction. In other words, this question was so emphasized by counsel in the examination of the plaintiff that the defendant was entitled to have this phase of the case distinctly submitted to the jury. While the court charged the jury generally upon the subject of contributory negligence, it did not call their attention to the point covered by defendant's tenth request, which request was justified by the testimony of the plaintiff.

The question whether the plaintiff realized at the time that she was confused and bewildered, and did not know where she was going, and continued blindly on, knowing that there was a ditch near by, and the effect of such condition of mind, was not called to the attention of the jury. Most certainly if such was her condition of mind, and she made no attempt to locate the ditch or any landmarks,

she would be guilty of contributory negligence. In *Black* v. *City of Manistee*, 107 Mich., at page 61 (64 N. W. 868), Justice HOOKER said:

"Where a person actually sees the danger before the accident, there is as great reason for him to avoid it, as there is for the municipality to provide against it beforehand."

In *Smith* v. *City of Jackson*, 106 Mich. 136 (63 N. W. 982), this court said:

"In view of plaintiff's own testimony, we think that the court did not err in holding, as a matter of law, that plaintiff, in continuing at a trot along this street, upon a dark night, within four or five feet of a recognized danger signal, was not in the exercise of ordinary care. If he had slackened the speed of his horse, and felt his way, it might have been said that he was in the exercise of some degree of care in the presence of a warning of danger, but he does not seem to have taken any precaution except to avoid driving over the light."

See, also, *Grandorf* v. *Railway Co.*, 113 Mich. 496 (71 N. W. 844); *Irion* v. *City of Saginaw*, 120 Mich. 295 (79 N. W. 572); *Cloney* v. *City of Kalamazoo*, 124 Mich. 655 (83 N. W. 618); *Hodge* v. *City of St. Louis*, 146 Mich. 173 (109 N. W. 252); *Sargeant* v. *City of Detroit*, 156 Mich. 291 (120 N. W. 792). It often occurs that a charge adapted to the particular evidence in the case will have weight with the jury, while a general abstract proposition of law will pass unnoticed by them. We cannot say that the giving of defendant's tenth request, or the substance of it, would not have changed the result. The refusal was in our opinion prejudicial error. We find no other error in the record.

For the error pointed out and discussed, the judgment below will be reversed, and a new trial granted.

OSTRANDER, C. J., and BIRD and BLAIR, JJ., concurred. HOOKER, J., concurred in the result.