# STATE OF MICHIGAN

# COURT OF APPEALS

MAE HENDRIX,

        Plaintiff-Appellant,

v

LAUTREC, LTD,

        Defendant-Appellee.

UNPUBLISHED
October 27, 2016

No. 328191
Oakland Circuit Court
LC No. 2014-142087-NO

Before: FORT HOOD, P.J., and GLEICHER and O'BRIEN, JJ.

PER CURIAM.

Mae Hendrix filed suit after falling on ice in a common area of the apartment complex where she resided. The circuit court summarily dismissed her complaint. Although we agree that Hendrix's common-law premises liability claim is untenable as the icy condition was open and obvious, she created a triable question of fact that Lautrec, Ltd violated its covenant under MCL 554.139(1)(a) that this common area was "fit for the use intended by the parties." Accordingly, we affirm in part, reverse in part and remand for continued proceedings.

## I. BACKGROUND

At the time of her fall, Hendrix lived with her husband in an apartment maintained by Lautrec, Ltd. From pictures presented into evidence, the apartments appear to be two-story residences connected side-by-side. The row of apartments does not directly abut the roadway. The photographs depict a series of connected garages and side-by-side driveways situated between the apartments and the street. Each tenant has an individual garage and driveway. Each individual garage opens onto the connected strip of driveways. The garages also have rear-entry doors. A walkway behind the garages provides access from the residential units to the rear-entry doors. There is no sidewalk at the bottom of the driveways.

On the morning of March 1, 2013, Hendrix and her husband returned home after running errands. Hendrix's husband parked their car in their driveway, the second from the end of a row of garages and driveways. Hendrix exited her car, retrieved groceries from the passenger-side rear seat, and began to walk across the adjoining driveway. She slipped and fell on ice that had unnaturally accumulated due to pooling from a downspout into an area of depressed and broken pavement. The parties agree that the driveway on which Hendrix fell is a common area of the apartment complex. Apparently, tenants routinely walk across neighboring driveways to reach their units, rather than always walking through their garages and exiting via the rear-entry doors.

- 1 -

Hendrix raised a single count of negligence against Lautrec but claimed both common-law premises liability and a statutory claim within. The circuit court summarily dismissed both claims under MCR 2.116(C)(10). The court concluded that Hendrix failed to plead her common-law claim in avoidance of the open-and-obvious doctrine. With respect to plaintiff's statutory claim, the circuit court found that plaintiff failed to present sufficient evidence to establish that, while icy, the driveway could not be used for its intended "mixed use" purpose. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a circuit court's resolution of a summary disposition motion. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 424; 751 NW2d 8 (2008). "A motion under MCR 2.116(C)(10) should be granted if the evidence submitted by the parties 'fails to establish a genuine issue regarding any material fact, [and] the moving party is entitled to judgment as a matter of law.' " *Id*. at 424-425 (citations omitted; alterations in original). In reviewing a motion for summary disposition under subsection (C)(10), courts are required to view the record in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Id*. at 425. A genuine issue of material fact exists when reasonable minds could differ with respect to an issue. *Id*.

We also review de novo questions of law, including the application and interpretation of statutes. *Id*. at 424. "The primary goal of statutory interpretation is to ascertain the legislative intent that may be reasonably inferred from the words expressed in the statute." *Id*. at 427 (quotation marks and citation omitted). When statutory language is clear, courts interpret the language according to its plain and ordinary meaning. *Id*.

## III. COMMON-LAW CLAIM

The circuit court properly dismissed Hendrix's common-law premises liability claim. Hendrix, as a tenant, was an invitee on Lautrec's land. See *Woodbury v Bruckner (On Remand)*, 248 Mich App 684, 691; 650 NW2d 343 (2001).

> [A] landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land. Michigan law provides liability for a breach of this duty of ordinary care when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect. [*Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012).]

A landowner bears no duty to warn or to protect invitees from dangers that are open and obvious, however. *Id*. at 460-461. "Perfection is neither practicable nor required by the law," and "[u]nder ordinary circumstances, the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary [conditions] 'foolproof.' " *Id*. at 460. In determining whether a condition is open and obvious, a court must ask "whether it is reasonable to expect that an average person with

ordinary intelligence would have discovered it upon casual inspection." *Id.* at 461. This test is completely objective. *Id.*

The icy patch on the driveway in this case was open and obvious. Hendrix acknowledged that "[i]t was cold" outside and that there was "a little bit of snow" on the ground at the time of her fall. The temperature was cold enough to freeze water on the ground. Photographs taken right after Hendrix's fall depict an obviously damp and icy surface. Hendrix admitted at her deposition that the ground appeared damp and "glossy." Moreover, Hendrix had resided in her apartment for seven years at the time of her accident. Given the length of her residency, a reasonable person would be aware of the downspout and the path of its runoff. The condition was therefore objectively open and obvious and this particular plaintiff should have been on guard.

Hendrix argues that special aspects rendered this open and obvious condition unreasonably dangerous and imposed a heightened duty on Lautrec to remedy the situation. Our Supreme Court has recognized a narrow exception to the open and obvious danger doctrine, generally termed "special aspects." Liability attaches "when *special aspects* of a condition make even an open and obvious risk unreasonable." *Id.* (emphasis in original). Special aspects exist when the risk created by a condition on the land qualifies as "unreasonable," i.e., a condition that poses "a uniquely high risk of severe harm." *Id.* at 461-462 (citation omitted). In this vein, "liability may be imposed only for an 'unusual' open and obvious condition that is 'unreasonably dangerous' because it 'present[s] an extremely high risk of severe harm to an invitee' in circumstances where there is 'no sensible reason for such an inordinate risk of severe harm to be presented.' " *Id.* (alteration in original, citation omitted).

The depression in the driveway was not so extreme as to create an unusual or inordinate risk of severe harm. Given the cycle of freezing and thawing, such imperfections and degradation of paving materials are commonplace in Michigan. Hendrix also contends that this case involved "black ice," which should be treated as a hidden danger. However, Hendrix admitted that the ground was visibly damp and glossy, belying her claim that the ice was unnoticeable. Moreover, our Supreme Court has specifically held that " 'black ice' " *is* "open and obvious when there are 'indicia of a potentially hazardous condition' " such as existed in this case. *Janson v Sajewski Funeral Home, Inc*, 486 Mich 934, 935; 782 NW2d 201 (2010), quoting *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 483; 760 NW2d 287 (2008).

Hendrix further asserts that the patch of ice was effectively unavoidable, invoking another exception to the open-and-obvious doctrine. An "effectively unavoidable" condition is one that is "inescapable," or incapable of being avoided. *Hoffner*, 492 Mich at 468. "[T]he standard for 'effective unavoidability' is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard. As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Id.* at 469 (emphasis in original). This Court has held that a plaintiff must be "effectively trapped" by the hazard for the exception to apply. *Joyce v Rubin*, 249 Mich App 231, 242; 642 NW2d 360 (2002).

This claim is completely without merit. Hendrix had an alternate route she could have traversed to her apartment. Hendrix could have walked through her garage and used the rear-facing door to access the sidewalk to her apartment. She was not required to walk across the icy driveway. Accordingly, the circuit court properly dismissed Hendrix's common-law claim.

## IV. STATUTORY CLAIM

The circuit court also summarily dismissed Hendrix's claim that Lautrec failed "to keep the premises and all common areas fit for the use intended by the parties in violation of MCL 554.139." Relevant to this case, MCL 554.139(1)(a) provides:

In every lease or license of residential premises, the lessor or licensor covenants:

(a) That the premises and all common areas are fit for the use intended by the parties.

The parties agree that the connected row of driveways is a common area. We could locate no precedent describing "the use intended by the parties" for a common driveway. In *Allison*, 481 Mich at 429, the Supreme Court determined that the primary intended use of a parking lot is to park cars. Therefore, a landlord has a duty to maintain the parking lot in a condition fit for the parking of cars. "The statute does not require a lessor to maintain a lot in an ideal condition or in the most accessible condition possible, but merely requires the lessor to maintain it in a condition that renders it fit for use as a parking lot," the Supreme Court concluded. *Id.* at 430.

But a driveway is not a parking lot. Unlike a parking lot, the connected driveways in this case are not used primarily for parking in practice; they are also intended for pedestrian access to the garages and pedestrian access to the residential units. In these senses, the driveways are more akin to sidewalks. In *Benton v Dart Props, Inc*, 270 Mich App 437, 444; 715 NW2d 335 (2006), this Court held that "a landlord has a duty to take reasonable measures to ensure that the sidewalks are fit for their intended use." It has long been held that "[s]idewalks are intended for the use of pedestrians, and they are entitled to walk upon them," even if the sidewalk bears defects. *Sargeant v Detroit*, 156 Mich 291, 294; 120 NW 792 (1909).

Hendrix established a genuine issue of material fact regarding whether Lautrec breached its duty under MCL 554.139(1)(a) to maintain the driveway in a manner befitting its intended use. The photos demonstrate that a substantial portion of the driveway directly abutting Hendrix's driveway was covered in ice. The ice formed when water flowing from a downspout connected to the garage pooled in an area of broken and depressed concrete before freezing. This ice created a dangerous condition making the driveway unfit for pedestrian use. Because the record supports that pedestrian travel constituted an "intended use" of the connected driveways, we reverse the dismissal of Hendrix's statutory claim and remand for continued proceedings.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.


/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher