## GINSBERG v. WINEMAN.

1. PRINCIPAL AND AGENT—LANDLORD'S REPAIR OF PREMISES.

In action against employer's landlord for injuries sustained when plaintiff fell down stairway to basement used in common with other tenants in the same building, question whether or not person who had repaired the stairway was an agent of the landlord was properly resolved against him where it appears the repairman worked under the direction of an employee of realty company which managed the properties of its stockholder and officer, the defendant, and had negotiated lease with plaintiff's employer, which lease contained a clause requiring the tenant to maintain the premises in good repair but permitted the landlord to enter, inspect and repair the premises.

2. LANDLORD AND TENANT—REPAIRS OF PREMISES BY LANDLORD NOT UNDER OBLIGATION TO DO SO—NEGLIGENCE.

A landlord, not under obligation to make repairs to premises, but who has gratuitously undertaken to do so, is liable to tenant's employee for injuries sustained by reason of negligence in the making of the repairs.

3. APPEAL AND ERROR—MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT—NEW TRIAL—EVIDENCE—LANDLORD AND TENANT—NEGLIGENCE—REPAIRS.

In action by tenant's employee for injuries sustained when he fell down stairs which had been negligently repaired by the landlord's agent, claims of defendant landlord that (1) case was presented to jury on issues other than those set forth in the pleadings, (2) there was no evidence of negligence

---

* Continued from Vol. 313.

Negligent repairs by lessor, see 2 Restatement, Torts, § 362; when gratuitously undertaken by lessor, § 420; lessor's duty to maintain portion of premises used in common with other tenants, §§ 360, 361, 421, 422.

chargeable to defendant, (3) plaintiff was guilty of contributory negligence as a matter of law, (4) repairs were not done in a negligent manner, and (5) there was no proof the repairman was defendant's agent, *held*, without merit when viewed in the light of the court's rulings on motions for judgment notwithstanding the verdict and for new trial and after considering charge to jury.

4. DAMAGES—ARM INJURY—EARNING CAPACITY.

Verdict for plaintiff of $7,000, as remitted by court from verdict by jury of $8,756, was not excessive nor contrary to law and the great weight of the evidence, where it is shown that he had been earning $60 a week and upwards as a steamcleaner, his left arm was so fractured as to result in 50 per cent. loss of use, and grip of hand is approximately 50 per cent. of what it was before the accident.

5. JURY—DISQUALIFICATION—VOIR DIRE EXAMINATION BY TRIAL JUDGE.

Motion for new trial was properly denied notwithstanding defendant's claim that two jurors were disqualified because they were delinquent in accounts owed to company of which he was vice-president and treasurer, which disqualifications were not known to him and not discovered until after verdict, where trial judge on *voir dire* examination had asked the jurors whether they were in any way connected with such corporation and if they knew of any reason why they could not sit as impartial jurors and each answered in the negative, as the mere claim that they withheld information regarding disputes over their accounts does not justify conclusion that verdict for plaintiff was rendered by reason of sympathy or prejudice.

6. SAME—CHALLENGE ON PARTICULAR GROUND—VOIR DIRE EXAMINATION BY TRIAL JUDGE.

If a party claims a juror is disqualified on a particular ground and the trial judge·conducts the *voir dire* examination, the party should request the court to put questions to the jury that would have formed the basis for such challenge (Court Rule No. 37, § 1 [1933]).

Appeal from Wayne; Webster (Arthur), J. Submitted January 8, 1946. (Docket No. 2, Calendar No. 43,081.) Decided March 4, 1946. Rehearing denied May 13, 1946.

Case by Abraham Ginsberg against Andrew Wineman for injuries sustained when plaintiff fell down

stairs. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*James A. Markle,* for plaintiff.

*LeRoy W. Belanger* (*Nelson S. Shapero,* of counsel), for defendant.

BUSHNELL, J. Plaintiff Abraham Ginsberg was an employee of his son, Morris Ginsberg, who rented a store and basement at 12226 Dexter Boulevard, Detroit, from defendant Andrew Wineman. In the written lease dated February 28, 1941, it was agreed that the tenant should "keep at his own expense during the continuance of this lease, the said premises and every part thereof in good repair." The lease also provided that the lessor should have "the right to enter upon said premises at all reasonable hours for the purpose of inspecting the same, and in order to prevent waste, loss or destruction, may make such repairs thereto as may be necessary, and shall not be responsible to the 'tenant' for any loss and damage that may accrue to his stock or business by reason thereof."

The tenant is engaged in the business of cleaning, pressing, dyeing, and repairing clothing, his steam equipment being located in the basement. He has only partial use of this basement because of the necessity on the part of the second floor tenants also to have access to a common furnace therein. Shortly after Ginsberg moved into the premises he informed the landlord's representative, Sink, that the toilet seat, molding, and basement stairway needed some repairs. He claimed that as a result of this complaint one Ralph Cullen, then in the employ of Wineman Realty Company, visited the premises and inspected the stairway. Cullen then, according to Ginsberg, left the premises, came back

with a hammer, worked on the stairway a while, and then told Ginsberg, in effect, that everything was all right. Cullen, who at the time of the trial was no longer in the employ of the realty company, denied making any repairs to the property, and especially to the basement steps. Defendant Wineman and the Ginsbergs had never met until the time of the trial. Wineman testified that he had never authorized nor directed Cullen to repair the premises, and stated that Cullen had never been in his personal employ. He said that Cullen had been in the employ, however, of the Wineman Realty Company, in which company Wineman is a stockholder and officer and which manages the various properties in which he is interested. He stated that the property on Dexter Boulevard was handled by Joseph E. Sink, also an employee of Wineman Realty Company. Sink testified that he negotiated the rental arrangements with Ginsberg and that Cullen worked under his direction. He denied ever having authorized or directed Cullen to make any repairs to the property, particularly the steps, and said he had no knowledge of such repairs.

Plaintiff Abraham Ginsberg for some years had been in the cleaning and pressing business in Bloomfield, New Jersey, and Toronto, Ontario. He gave up his business in Toronto and came to Detroit, where he was employed for a time by the Reliable Linen Service Company as a spotter at $35 per week. A few weeks before his accident he gave up his position in order to assist his son, under an agreement by which he was to receive $60 per week. He claimed that his average earnings while with the Reliable Linen Service Company and for outside overtime work totaled about $60 to $65 per week.

On August 18, 1941, Abraham Ginsberg started down the basement stairs of his son's place of business to do some steamcleaning, and just as he

stepped on the second tread it "tipped right off" and he fell the entire length of the stairway to the basement floor. According to Dr. Lester F. Kennedy, who attended him, plaintiff sustained an impacted fracture of the head of the left humerus, which when operated upon was found to be in about 20 or 30 fragments, with no piece large enough to be attached, thereby making it impossible to save any part thereof. As a result he suffered a 50 per cent. loss of a normally useful arm, of which he now has only forward and back motion, but no ability to elevate; and the grip of his hand is approximately 50 per cent. of what it was before the accident. Morris Ginsberg testified that before he called Sink the plank of the second step was loose so that the end protruding away from the wall could be lifted up and the nails would come up with the plank. Prior to the accident and after its repair by Cullen, he had not examined the step to see whether any new nails had been driven into it, but after taking his father to the hospital he examined the step closely and "noticed that when we shoved the nails to put the plank back, that the only thing that would happen, the nails would go back into the old nail holes," and that "apparently Mr. Cullen might have just knocked the nails back into the same holes, and just hammered them good and hard so that it looked all right." No new nails had been driven into the step, but the hammer marks could be seen where the old nails had been pounded down.

At the close of the testimony, defendant's motion for a directed verdict was taken under advisement and the disputed testimony was submitted to the jury, which returned a verdict for plaintiff in the sum of $8,756. Defendant's motion for judgment *non obstante veredicto* was denied, but upon a motion for new trial, in the light of defendant's claim that the verdict of the jury was grossly excessive

and unreasonable, the court ordered a remittitur of all of the verdict above $7,000.

Defendant has appealed from a judgment entered upon the $7,000 remitted verdict.

The question raised as to Cullen's agency must be resolved against the defendant because of Wineman's testimony. When asked if Sink was his agent at the time the lease was negotiated, he stated that Sink had his "authority to take care of and look after that property." He later testified to some limitations on Sink's authority, but stated that Cullen acted under Sink's direction and that, if a board came loose on a step in one of his properties, Sink would have authority to drive a nail into it or authorize someone else to do it without personally contacting or consulting him, if Sink thought it was the duty of the landlord or the owner to do that work.

Wineman, under the terms of his written lease with Ginsberg, was not obligated to repair and maintain the premises, including the stairs on which the accident occurred. However, the decisive question is, if the step was gratuitously repaired by Wineman's agent, although he was not legally obligated to do so, and that repair was made in a negligent manner, is Wineman liable for injuries sustained by the tenant's employee as a result of the improper repair?

Under the heading of "Landlord's liability for injury to person or damage to property as affected by his making of repairs in absence of obligation to do so," there are annotated in 150 A. L. R. p. 1373 *et seq.* authorities from 31 States to the effect that, under such circumstances, the landlord is liable; but no Michigan cases are cited in this annotation; nor are any cases cited from Massachusetts, where the rule is that, "generally a landlord making repairs gratuitously is liable only for gross negligence."

In 2 Restatement, Torts, § 362, American Law Institute, entitled, "negligent repairs by lessor," it is said:

" 'The lessor of land, who, by purporting to make repairs thereon while the land is in the possession of his lessee or by the negligent manner in which he has made such repairs has, as the lessee neither knows nor should know, made the land more dangerous for use, is subject to liability for bodily harm caused thereby to the lessee and others upon the land with the consent of the lessee or sublessee.' "

In *Rhoades* v. *Seidel*, 139 Mich. 608 (18 Am. Neg. Rep. 135), the plaintiff relied upon authorities therein cited, which held that, if a landlord voluntarily undertakes to repair, he is responsible for injuries resulting from the negligent performance of his undertaking, but the court in that case, although recognizing such authorities, held that the principle of the cited cases was inapplicable to the case at bar.

In *Sorenson* v. *Kalamazoo Auto Sales Co.*, 201 Mich. 318, 330, a case involving an action against a landlord by reason of injuries sustained by the plaintiff, who, when he drove into defendant's garage, was directed to drive onto an elevator which had been repaired by an expert engaged by the tenant, the cost of which was paid by the landlord, Mr. Justice FELLOWS, in a dissenting opinion, had this to say:

"This court has held that where the landlord assumed to make repairs, though not required so to do by his lease, he was responsible to his tenant for his negligence in making them."

See authorities therein cited.

The majority in the *Sorenson Case* planted decision upon the fact that as between the landlord and

the repairman, the latter was an independent contractor over whom the landlord neither exercised, nor retained the right to exercise, any control, and that the liability to plaintiff was that of the tenant.

In *Peerless Manfg. Co.* v. *Bagley*, 126 Mich. 225, 230 (53 L. R. A. 285, 86 Am. St. Rep. 537), where a tenant sought to recover against the landlord because of damage done by a faulty sprinkler system, the court said:

"A landlord assuming to make repairs, though not required to do so by his lease, is responsible for his lack of skill in making them."

These authorities indicate that the law in Michigan is in accord with the view held by the majority of other States, and that we should adopt the rule as stated in the Restatement of Torts, hereinbefore quoted.

Under the facts of this case and in the light of that rule, Wineman, having gratuitously undertaken, through his agents, Sink and Cullen, to make repairs on the premises, although not legally obligated to do so, and those repairs having been made in a negligent manner, Wineman, the landlord, must be held liable for the injuries sustained by his tenant's employee, by reason of such negligent repairs.

Defendant claims that the case was presented to the jury on issues other than those set forth in the pleadings, that there was no evidence of negligence chargeable to him, that the jury was not charged that plaintiff was guilty of contributory negligence as a matter of law, that the repairs were not done in a negligent manner, and there was no proof of Cullen's agency. These questions have all been examined in the light of the court's rulings on the motions for judgment notwithstanding the verdict, and for a new trial, and, also, after considering the

charge to the jury. They are all found to be without merit. Nor can it be said that the verdict and judgment as remitted are excessive and contrary to the law and the great weight of the evidence.

In his motion for a new trial the defendant, who is vice-president and treasurer of the Peoples Outfitting Company, claimed that two members of the jury were disqualified, which disqualifications were not known to him and not discovered until after the verdict. He refers to two women who, according to the affidavit of the credit and collection manager of the Peoples Outfitting Company, were delinquent in their accounts to that concern, and states that it was necessary that collectors call on them in order to secure payment. This question, if proper, could have been raised when the jury was examined. The jurors were asked by the trial judge whether they were in any way connected with the Peoples Outfitting Company, and if they knew of any reason why they should not sit as impartial jurors. To each of these questions the jurors answered in the negative. The claim that these two withheld information regarding disputes over their accounts does not justify the conclusion that the verdict was rendered by reason of sympathy or prejudice. If defendant's counsel desired to challenge any juror on this ground he should have requested the court to put questions to the jury that would have formed a basis for such challenge. See Court Rule No. 37, § 1 (1933).

The court did not err in denying defendant's motion for judgment *non obstante veredicto* or his motion for new trial.

The judgment is affirmed, with costs to appellee.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.