MOBIL OIL CORPORATION v THORN

Docket No. 58248. Argued June 8, 1977 (Calendar No. 11).—Decided
    October 6, 1977.
        Mobil Oil Corporation brought an action against Dallas Thorn to
        collect money for the sale of petroleum products and to termi-
        nate a service station lease agreement. The defendant tenant
        brought a counterclaim for damages which included personal
        injuries resulting from a failure of the landlord to repair the
        service station premises as agreed in the lease. The Genesee
        Circuit Court, Harry B. McAra, J., granted summary judgment
        for Mobil on the counts of the counterclaim based on the
        breach of the covenant to repair. The Court of Appeals, Danhof,
        P. J., and V. J. Brennan, J. (M. J. Kelly, J., concurring), af-
        firmed (Docket No. 23070). Defendant appeals. *Held:*

        1. Under existing law it has been a well settled rule, as
        limited by the Legislature, that an action in tort cannot be
        predicated by a tenant upon a breach by the lessor of an
        agreement to make repairs of commercial premises. However,
        the former rule no longer serves the best interests of justice in
        our modern society. The argument that parties to a commercial
        lease are necessarily in a more equal bargaining position than
        are the parties to a residential lease is not convincing. This is
        amply demonstrated by the parties in the instant case, a major
        oil corporation landlord and a service station operator tenant.

        2. It would be inconsistent to hold that a lessor is liable for
        negligence in making repairs but that he may escape liability
        altogether by refusing to perform under a covenant to make
        repairs. Therefore, the former doctrine is overruled and the
        modern rule is adopted. A lessor of land is subject to liability
        for physical harm caused to his lessee and others upon the land
        with the consent of the lessee or his sublessee by a condition of
        disrepair existing before or arising after the lessee has taken
        possession if (a) the lessor, as such, has contracted by a cove-
        nant in the lease or otherwise to keep the land in repair, and
        (b) the disrepair creates an unreasonable risk to persons upon
        the land which the performance of the lessor's agreement

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 49 Am Jur 2d, Landlord and Tenant §§ 850–853.

would have prevented, and (c) the lessor fails to exercise reasonable care to perform his contract.

Reversed and remanded for further proceedings.

67 Mich App 682; 242 NW2d 487 (1976) reversed.

*Kuyk v Green,* 219 Mich 423; 189 NW 25 (1922), overruled.

1. Landlord and Tenant—Torts—Covenant to Repair—Residential Leases.

The common-law rule that an action in tort cannot be predicated by a tenant upon a breach by the lessor of an agreement to make repairs has been abrogated in its applicability to leases for residential dwellings by statute (MCL 125.536; MSA 5.2891[16]).

2. Landlord and Tenant—Torts—Covenant to Repair—Common Law—Commercial Tenant.

The common-law doctrine that an action in tort cannot be predicated by a commercial tenant upon a breach by the lessor of an agreement to make repairs is overruled; the rule no longer serves the best interests of justice in our modern society, and it is inconsistent to hold, as it has been held, that a lessor is liable for negligence in making repairs, but that he may escape liability altogether by refusing to perform under a covenant to make repairs.

3. Landlord and Tenant—Torts—Covenant to Repair.

A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if (a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and (b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and (c) the lessor fails to exercise reasonable care to perform his contract.

*Gault, Davison, Bowers & Hill* for plaintiff.

*Walter L. Leech* for defendant.

Fitzgerald, J. The issue before this Court is whether a lessor is liable in tort to his lessee for personal injuries and damages resulting from a

failure of the lessor to perform under a covenant in the lease to repair the premises. The trial court and Court of Appeals, following the rule in *Kuyk v Green,* 219 Mich 423; 189 NW 25 (1922), that an action in tort may not be predicated by a lessee upon a breach by the lessor of an agreement to make repairs, decided this issue in the negative. This Court granted leave for the purpose of reexamining the rule enunciated in *Kuyk v Green, supra.* 397 Mich 889 (1976). We reverse for the reasons stated herein.

I

Plaintiff and cross-defendant (hereinafter referred to as plaintiff), Mobil Oil Corporation, and defendant and cross-plaintiff (hereinafter referred to as defendant), Dallas Thorn, agreed to a stipulation of facts for the proceedings in the Court of Appeals. Those stipulated facts are, in pertinent part, as follows.

Plaintiff filed suit in Genesee Circuit Court in order to collect monies upon an open account it alleged were due from defendant for the sale of petroleum products and to terminate a service station lease agreement it had with defendant. Defendant filed a "cross-complaint" (counterclaim) alleging that certain damages, including those for personal injuries sustained by defendant, were recoverable by defendant from plaintiff. Counts I and II were based upon a covenant-to-repair clause in the lease agreement for a Mobil station entered into by the parties on October 15, 1970. According to the lease, plaintiff, as lessor, agreed to make any necessary repairs to the roof of the station and to keep it in good operating condition.[1]

---

[1] Paragraph 5 of the lease provided as follows:
"5. Maintenance Obligations—Landlord. Landlord, at its expense,

After defendant's entry upon the premises, the roof of the service station began to leak and "cause[d] an extremely slippery condition to exist on the premises". Defendant lessee notified (allegedly on several occasions) plaintiff lessor to repair the roof in accordance with the notice requirements under paragraph 5 of the lease agreement, but plaintiff "failed and refused to do so". As a result of the slippery condition of the premises, caused by the leaks in the roof and plaintiff's failure to repair, defendant fell and seriously injured his back on June 13, 1971. At the time of the injury, the lease was in effect.

Defendant, in counts I and II of his counterclaim, sought recovery for "the damages sustained by him on account of his injury" and alleged "that such were the result of the breach of contract and of the 'negligent and careless' acts" of plaintiff. On January 27, 1975, the trial court granted plaintiff's motion for summary judgment under GCR 1963, 117.2(1) as to counts I and II of defendant's counterclaim, and the Court of Appeals affirmed on March 9, 1976. 67 Mich App 682; 242 NW2d 487 (1976).

## II

It is apparent that the trial court correctly

shall make repairs (including painting) deemed necessary by it to keep such of the following improvements and equipment, as are covered by this lease in good operating condition, provided the necessity therefor is due to ordinary wear or to damage by the elements: air compressors, lifts, air towers, fuel pumps (including nozzles and hoses), fuel tanks and lines, lubricating equipment, pavements and driveways, signs, wiring, piping, overhead doors (except glass therein), plate glass, *roofs*, walls and foundations of buildings. Landlord's obligation to repair shall not arise until (a) landlord is notified that the item in question is not in good operating condition and (b) landlord shall have determined in its uncontrolled discretion and within a reasonable period that the necessity for repair is due to a cause referred to above. Tenant shall either make the item harmless or shall not use it or permit it to be used until repaired. In lieu of repairing, landlord may make replacements."

found that defendant's claim was unenforceable under existing law, as it has been a well settled rule in this state that

"an action in tort cannot be predicated, by a tenant, upon a breach by the lessor of an agreement to make repairs." *Kuyk v Green, supra,* 219 Mich 423, 425.

*Huey v Barton,* 328 Mich 584; 44 NW2d 132 (1950); and *Awad v McColgan,* 357 Mich 386; 98 NW2d 571 (1959). While this common-law rule has been abrogated in its applicability to leases for residential dwellings with the enactment of 1968 PA 286, § 136, MCLA 125.536; MSA 5.2891(16),[2] the rule has been left unchanged in its applicability to leases for commercial premises. The question before this Court then is whether to retain the rule enunciated in *Kuyk v Green, supra,* as limited by the Legislature, or to reject the rule in its entirety.

At one time a very large majority of jurisdictions in the United States adhered to the rule that a lessor who breaches his covenant to make repairs is thereby not rendered liable for personal

---

[2] MCLA 125.536; MSA 5.2891(16) provides:

"(1) When the owner of a dwelling regulated by this act permits unsafe, unsanitary or unhealthful conditions to exist unabated in any portion of the dwelling, whether a portion designated for the exclusive use and occupation of residents or a part of the common areas, where such condition exists in violation of this act, any occupant, after notice to the owner and a failure thereafter to make the necessary corrections, shall have an action against the owner for such damages he has actually suffered as a consequence of the condition. When the condition is a continuing interference with the use and occupation of the premises, the occupant shall also have injunctive and other relief appropriate to the abatement of the condition.

"(2) Remedies under this section shall be in addition to such other relief as may be obtained by seeking enforcement of the section authorizing suits by a local enforcement agency. The remedies shall be concurrent. When several remedies are available hereunder, the court may order any relief not inconsistent with the objectives of this act, and calculated to achieve compliance with it.

injuries to the lessee caused by a condition which the lessor failed to remedy. In following *Kuyk v Green, supra,* this Court in *Huey v Barton, supra,* said:

"Recovery for such injuries has been denied as not within the contemplation of the parties to the covenant or 'too remote' a consequence of the breach in actions on the contract; and even those jurisdictions allowing recovery in tort do not award damages for personal injuries in actions sounding in contract." 328 Mich 584, 587.

Therefore, the injured lessee's sole remedy under such circumstances was for breach of contract, with its more limited measure of recovery, which frequently was the cost of making the needed repair. Under the old rule a lessee could recover in tort only if the lessor was negligent in making repairs and personal injuries resulted therefrom. *Ginsberg v Wineman,* 314 Mich 1; 22 NW2d 49 (1946).

In recent years, however, there has been a trend toward holding that a lessor is liable to a lessee, or one in privity to the lessee, for personal injuries resulting from the lessor's failure to perform under a covenant to make repairs. It appears that at present, 26 states have rejected the rule that a lessor is not liable for personal injuries under such circumstances. See the extensive annotation on this subject, 78 ALR2d 1238, and later case service. The American Law Institute has adopted the modern rule which is stated in 2 Restatement Torts, 2d, § 357, p 241 as follows:

"A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a

condition of disrepair existing before or arising after the lessee has taken possession if

"(a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and

"(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and

"(c) the lessor fails to exercise reasonable care to perform his contract."

Plaintiff maintains that the "social considerations" which led the American Law Institute to adopt § 357 of Restatement Torts, 2d, that is, the need to protect the tenant renter, "[exclude] its provisions from applicability to the commercial lease". However, there is no distinction made between "residential" and "commercial" leases in § 357. We believe that had the American Law Institute intended to limit § 357 to residential leases, it would have done so with clear language to that effect. Nor do we find convincing plaintiff's argument that parties to a commercial lease are necessarily in a more equal bargaining position than are the parties to a residential lease. To be sure, the parties in the instant case, a major oil corporation and a service station operator, cannot seriously be said to have been in an equal bargaining position.

Accordingly, we find that the rule enunciated in *Kuyk v Green, supra,* no longer serves the best interests of justice in our modern society. That this is so is amply demonstrated by the case at bar. Therefore, we do not hesitate to overrule the doctrine in *Kuyk* and adopt the modern rule as stated in 2 Restatement Torts, 2d, § 357, p 241. In our judgment, it would be inconsistent for us to hold in this context that a lessor is liable for negligence in making repairs, as in *Ginsberg, su-*

*pra,* but that he may escape liability altogether by refusing to perform under a covenant to make repairs.

Because we have rejected the basis for granting plaintiff's motion for summary judgment, the Court of Appeals and trial court are reversed. We remand the matter to the trial court for further proceedings in accordance with this opinion.

Costs to defendant.

KAVANAGH, C. J., and WILLIAMS, LEVIN, COLEMAN, RYAN, and BLAIR MOODY, JR., JJ., concurred with FITZGERALD, J.