WOODBURY v BRUCKNER (ON REMAND)

Docket No. 204411. Submitted July 26, 2001, at Detroit. Decided December 14, 2001, at 9:05 A.M. Leave to appeal sought.

Ruth Woodbury brought an action in the Monroe Circuit Court against Charles I. and Alice Bruckner, alleging premises liability for injury sustained by the plaintiff, at an apartment she rented from the defendants, when she fell off a deck that was nine feet above the ground and that did not have a railing. The court, Daniel L. Sullivan, J., granted summary disposition for the defendants, ruling that the deck posed an open and obvious danger for which the defendants cannot be held liable. The Court of Appeals, GRIFFIN, P.J., and GAGE, J. (R. J. DANHOF, J., dissenting), in an unpublished opinion per curiam issued December 1, 1998 (Docket No. 204411), reversed and remanded for further proceedings, holding that a landowner may be held liable for a dangerous condition that, despite its openness and obviousness, remains unreasonably dangerous, and holding that in this case there remains a genuine issue of fact whether the deck was unreasonably dangerous. The Supreme Court granted the defendants leave to appeal and consolidated this case with *Lugo v Ameritech Corp, Inc*, Supreme Court Docket No. 112575, for purposes of oral argument. 461 Mich 992 (2000). Following the Supreme Court decision in *Lugo*, 464 Mich 512 (2001), the Supreme Court remanded this case to the Court of Appeals for reconsideration in light of *Lugo*, directing the Court of Appeals to determine, among other things, "(1) whether the covenant imposed by MCL 554.139 gave rise to a duty in tort, see *Mobil Oil Corp v Thorn*, 401 Mich 306, 311-312 (1977); (2) if so, whether defendants can avoid tort liability arising from MCL 554.139 by relying on the open and obvious doctrine; and (3) whether defendants were entitled to summary disposition on their alternate theory that they were 'landlords out of possession,' see, e.g., *Wallington v Carry*, 80 Mich App 248 (1977)." 464 Mich 875 (2001).

On remand, the Court of Appeals *held*:

1. As clarified in *Lugo*, a premises possessor generally is not required to protect an invitee from an open and obvious danger; however, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a

duty to undertake reasonable precautions to protect the invitee from that risk. In this case, the deck possessed special aspects that differentiated its risk from typical open and obvious conditions so as to create an issue of fact whether the risk of harm was unreasonably dangerous.

2. Whether an independent duty in tort also arises by operation of MCL 554.139 is irrelevant in view of the defendants' concession that they owed a duty to the plaintiff.

3. Under the facts of this case, the open and obvious doctrine is not applicable because a question of fact exists whether the danger posed by the deck was unreasonable despite being open and obvious.

4. The "landlords out of possession" doctrine, under which a landlord had no obligation to inspect or repair premises in the possession of a tenant, has been overruled in *Mobil Oil Corp, supra,* and therefore provides no basis on which to grant summary disposition for the defendants.

Reversed and remanded for further proceedings.

NEGLIGENCE — PREMISES LIABILITY — INVITEES — OPEN AND OBVIOUS DANGERS.

A premises possessor generally is not required to protect an invitee from an open and obvious danger on the premises; however, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect the invitee from that risk.

*Czeryba and Godfroy, P.C.* (by *Christopher M. Hills*), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Jeffrey C. Gerish*), for the defendants.

ON REMAND

Before: GRIFFIN, P.J., and GAGE and OWENS*, JJ.

GRIFFIN, P.J. On remand from the Supreme Court, we reconsider an order granting summary disposition

---

* On remand, Judge OWENS has been assigned to replace former Court of Appeals Judge R. J. DANHOF.

in favor of defendants pursuant to MCR 2.116(C)(10). After doing so, we again reverse and remand.

I

In reviewing the grant of summary disposition under MCR 2.116(C)(10), we assess the substantively admissible evidence in the light most favorable to the party opposing the motion. *Maiden v Rozwood*, 461 Mich 109, 119-121; 597 NW2d 817 (1999); *Bullock v Automobile Club of Michigan*, 432 Mich 472, 474-475; 444 NW2d 114 (1989). In her brief on remand, plaintiff summarizes the relevant facts as follows:

> This is a premises liability action in which the Plaintiff/Appellant, Ruth Woodbury, was injured when she fell from a second story, unguarded deck at the apartment that she had rented from defendants/appellees . . . . The dwelling had two apartments, one upstairs and the other downstairs. Plaintiff/Appellant occupied the second story apartment and had lived in the apartment for several years.
>
> The dwelling used to have an outside stairway which led directly from the ground to the upstairs apartment enabling a person to enter the second story apartment without entering the first floor. At a time unknown, but before Plaintiff/Appellant began her tenancy at the dwelling, the stairway was removed and a covered stairway was built leading up to the second story apartment. To accomplish this task, an addition was built which jutted out from the main structure where the stairway had been located. The deck above this addition was directly outside the second story door enabling a person to walk through the second story apartment door onto it. The area outside the door was several feet wide and long, and was more or less flat or with a very slight pitch. Even though the area was elevated over nine feet from the ground, the edge was not protected by a railing. The door which led from the apartment to this area was operational at all times during Plaintiff/Appellant's tenancy . . . .

From the first day of her tenancy at the apartment and continuing throughout the term of said tenancy, Plaintiff/Appellant Ruth Woodbury used the walk-out deck area of this structure as a balcony/porch/deck.[1] Ruth would often venture onto this area to answer the door as it would relieve her of the necessity of making a trip up and down the stairs to meet visitors. She would also use this area for flowers or shaking out her area rugs while cleaning the apartment. Any person at the apartment, child and adult alike, could access this area by merely opening the door and walking out.

During the Plaintiff/Appellant's tenancy, Defendants/Appellees acquired this dwelling solely as income generating property from the previous owner, Helen Braun. Upon purchase from Ms. Braun, Defendants/Appellees made several repairs to the property, including installation of a new furnace near the stairs leading up to the apartment.

This was a concern to Plaintiff/Appellant because if the furnace started a fire, she and her husband would be cut off from the only exit leading to the ground floor from the apartment. In the past, Ruth had always relied on the fact that, in the event of a fire, she could always head out onto the porch area. Defendant/Appellee Charles Bruckner himself considered the door leading to this area as a fire exit and told Plaintiff/Appellant's husband they should use it as a fire exit. However, with the placement of the new furnace by the stairs, this area became even more important to Ruth and her husband as it might be the only means of escape during a fire. Yet, despite Plaintiff/Appellant's requests, Defendants/Appellees did not erect a railing to prevent falls from this area.[2]

---

[1] Defendants characterize this 8' x 10' walkout area as a mere flat roof.

[2] Defendants deny that such requests were made. However, John Woodbury in his deposition testified as follows:

Q. Did you ask him [Charles Bruckner] to do any more than that?

A. I think we did mention that we would like a railing put out there.

Q. You think? Why did you ask that?

A. Because it was a good idea at the time, I thought.

On the night of the accident, Ruth, who had difficulty sleeping, was restless and awoke. As she often would during these periods of insomnia, Ruth decided to clean her apartment. After cleaning the inside of the apartment and vacuuming, Ruth went outside onto the second story deck to shake out her throw rugs (ostensibly to avoid creating a dust cloud inside the apartment). Ruth walked onto the area in question and began shaking the rugs when she lost her balance and fell to the ground below, shattering both of her ankles and legs. These injuries ultimately led to the amputation of one of her legs.

Roger Roach, the Petersburg building inspector, soon after this incident, cited Defendants/Appellees for maintaining an elevated area over thirty (30) inches above the ground without a railing . . . .

In granting defendants' motion for summary disposition, the lower court ruled that the rooftop was an open and obvious condition:

The Defendant[s] Bruckners could not anticipate Plaintiff would fail to protect herself from this type of incident. She proceeded to use the roof-top despite the obvious danger of falling from it. This Court will not impose a duty upon a party when none should exist.

In a two-to-one decision,[3] this Court reversed and remanded for further proceedings. *Woodbury v Bruckner*, unpublished opinion per curiam of the Court of Appeals issued December 1, 1998 (Docket No. 204411). The panel unanimously concluded that the absence of a guardrail on the second-story roof

---

*Q.* Now, you say you think you asked Bruckner to put a railing—

*A.* I'm almost sure while they were doing the work we requested that a railing be put up. But to what date or what time, I cannot swear to, *but I'm sure that we've asked him more than once.* [Emphasis added.]

[3] Judge Danhof filed a dissenting opinion.

area was an open and obvious condition known to plaintiff. However, the majority held that summary disposition was erroneously granted because there was a genuine issue of fact whether the open and obvious condition was unreasonably dangerous:

In this case, the parties agree that the second story roof-top porch did not have a guardrail and both defendants and plaintiff were aware of this condition. The danger of falling from the roof was open and obvious. However, even though the danger was open and obvious, defendants are not necessarily relieved of liability.

In *Bertrand v Alan Ford Inc*, 449 Mich 606; 537 NW2d 185 (1995), the Supreme Court clarified the duty owed by a landowner to an invitee where the dangerous condition is open and obvious, finding that, although a possessor of land may not have an obligation to warn invitees of an open and obvious danger, the landowner may still have a duty to protect invitees against unreasonably dangerous conditions. *Id.* at 610-611. The Court stated, "if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions. The issue then becomes the standard of care and is for the jury to decide." *Id.* at 611. See also, *Hughes [v PMG Building, Inc*, 227 Mich App 1; 574 NW2d 691 (1997)], *supra* at 10-11; *Hottmann v Hottmann*, 226 Mich App 171, 175-176; 572 NW2d 259 (1997).

In view of the absence of guardrails, the height of the roof-top porch, and the inherent dangerousness of the condition, we conclude that a genuine issue of fact exists as to whether the risk of plaintiff falling from the roof remained unreasonable. *Hottmann, supra* at 176. Accordingly, we hold that the trial court erred in granting defendants' motion for summary disposition. Because of our disposition, it is not necessary for us to address the other issues raised by plaintiff on appeal. [*Id.* at p 2.]

Defendants' application for leave to appeal was granted by the Supreme Court and the case was consolidated for purposes of oral argument with *Lugo v Ameritech Corp, Inc*, Docket No. 112575. 461 Mich 992 (2000). Joint oral arguments were held in the Supreme Court on October 10, 2000. On July 3, 2001, the Supreme Court rendered its decision in *Lugo*. 464 Mich 512; 629 NW2d 384 (2001). Two days later, the Supreme Court remanded this case to our Court in an order that states in pertinent part:

> The cause having been briefed and orally argued, the judgment of the Court of Appeals is vacated, and the case is remanded to that Court for reconsideration in light of *Lugo v Ameritech Corp, Inc*, 464 Mich 512 (2001). On reconsideration, the Court of Appeals is to determine, inter alia, (1) whether the covenant imposed by MCL 554.139 gave rise to a duty in tort, see *Mobil Oil Corp v Thorn*, 401 Mich 306, 311-312 (1977); (2) if so, whether defendants can avoid tort liability arising from MCL 554.139 by relying on the open and obvious doctrine; and (3) whether defendants were entitled to summary disposition on their alternate theory that they were "landlords out of possession," see, e.g., *Wallington v Carry*, 80 Mich App 248 (1977). [*Woodbury v Bruckner*, 464 Mich 875 (2001).]

Pursuant to the Supreme Court's order, we now reconsider the case in light of *Lugo, supra*, and also consider the three additional issues raised in the order of remand.

II

In *Mobil Oil Corp v Thorn*, 401 Mich 306; 258 NW2d 30 (1977), the Supreme Court held that the common-law rule that a lessor could not be held liable for injuries arising from a breach of a covenant to do repairs

"has been abrogated in its applicability to leases for residential dwellings with the enactment of 1968 PA 286." *Id.* at 310. The Court further adopted the rule stated in 2 Restatement Torts, 2d, § 357:

> A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if
>
> (a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and
>
> (b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and
>
> (c) the lessor fails to exercise reasonable care to perform his contract. [*Id.* at 311-312.]

Tenants are regarded as their landlord's invitees.[4] *Stanley v Town Square Cooperative*, 203 Mich App 143, 149; 512 NW2d 51 (1993). Although an invitor has a duty to maintain his property in a reasonably safe condition and is subject to liability for harm caused to invitees because of a condition on the land, ordinarily there is no duty to protect or warn where the danger is open and obvious. *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 90, 95-96; 485 NW2d 676 (1992). However, "if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions. The issue then

---

[4] In their original Court of Appeals brief, defendants admitted that "[p]laintiff, as a tenant of the Buckners, was a business invitee on their property." Further, defendants conceded that the scope of their duty to plaintiff was governed by 2 Restatement Torts, 2d, §§ 343 and 343A.

becomes the standard of care and is for the jury to decide." *Bertrand, supra* at 611 (applying 2 Restatement Torts, 2d, §§ 343[5] & 343A[6]).

III

Pursuant to the Supreme Court's directive, we now reconsider our prior decision in light of *Lugo, supra.* After doing so, we conclude that our prior decision is consistent with and supported by *Lugo.* Accordingly, we again reverse and remand for further proceedings.

In *Lugo*, our Supreme Court clarified the open and obvious doctrine. In particular, the Court held that "if *special aspects* of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Id.* at 517 (emphasis added). The Supreme Court defined the term "special aspects" and provided examples of conditions that because of their "special aspects" may be

---

[5] 2 Restatement Torts, 2d, § 343 provided:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

[6] 2 Restatement Torts, 2d, § 343A provided:

A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

unreasonably dangerous despite being open and obvi-
ous. "Special aspects" was defined as those condi-
tions "that give rise to a uniquely high likelihood of
harm or severity of harm if the risk is not avoided."
*Id.* at 519. The risk of "falling an extended distance"
was cited as a special aspect. *Id.* at 520. The illustra-
tions of special aspect conditions discussed in *Lugo*
were "an unguarded thirty foot deep pit in the middle
of a parking lot" and standing water at the only exit
of a commercial building. *Id.* at 518. Our Supreme
Court explained:

> Consistent with *Bertrand,* we conclude that, with regard
> to open and obvious dangers, the critical question is
> whether there is evidence that creates a genuine issue of
> material fact regarding whether there are truly "special
> aspects" of the open and obvious condition that differenti-
> ate the risk from typical open and obvious risks so as to
> create an unreasonable risk of harm, i.e., whether the "spe-
> cial aspect" of the condition should prevail in imposing lia-
> bility upon the defendant or the openness and obviousness
> of the condition should prevail in barring liability.
>
> An illustration of such a situation might involve, for
> example, a commercial building with only one exit for the
> general public where the floor is covered with standing
> water. While the condition is open and obvious, a customer
> wishing to exit the store must leave the store through the
> water. In other words, the open and obvious condition is
> effectively unavoidable. Similarly, an open and obvious con-
> dition might be unreasonably dangerous because of special
> aspects that impose an unreasonably high risk of severe
> harm. To use another example, consider an unguarded
> thirty foot deep pit in the middle of a parking lot. The con-
> dition might well be open and obvious, and one would
> likely be capable of avoiding the danger. Nevertheless, this
> situation would present such a substantial risk of death or
> severe injury to one who fell in the pit that it would be
> unreasonably dangerous to maintain the condition, at least
> absent reasonable warnings or other remedial measures

being taken. In sum, only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine. [*Id.* at 517-519.]

After applying *Lugo* to the present case, we conclude that the unrailed rooftop porch possesses "special aspects" that differentiate its risk from typical open and obvious conditions so as to create an issue of fact whether the risk of harm was unreasonably dangerous. In fact, *Lugo* cites the risk of "falling an extended distance" as being within the class of risks that possess an especially high severity of harm. *Id.* at 520. This is precisely the risk that we address in the present case involving an unguarded rooftop porch. Severe injury should have been expected because of defendants' failure to remedy the "special aspects" of this open and obvious condition. As we stated in our prior opinion:

In view of the absence of guardrails, the height of the roof-top porch, and the inherent dangerousness of the condition, we conclude that a genuine issue of fact exists as to whether the risk of plaintiff falling from the roof remained unreasonable.

For these reasons, we hold that there are sufficient "special aspects" inherent in the unguarded rooftop porch to permit a jury to find the condition to be unreasonably dangerous despite being open and obvious.

IV

Next, we are asked by the Supreme Court's order to decide "whether the covenant imposed by MCL

554.139[7] gave rise to a duty in tort, see *Mobil Oil Corp v Thorn*, 401 Mich 306, 311-312 (1977)."

The concept of duty encompasses whether the defendant owes the plaintiff any obligation to avoid negligent or other conduct. *Moning v Alfono*, 400 Mich 425, 437; 254 NW2d 759 (1977); *Hakari v Ski Brule, Inc*, 230 Mich App 352, 359; 584 NW2d 345 (1998). In deciding whether a common-law duty should be imposed, "the court must look at several factors, including the relationship of the parties, the foreseeability of harm, the burden on the defendant, and the nature of the risk presented." *Id.* In regard to the present landlord-tenant relationship, our Supreme Court in *Mobil Oil, supra*, held that a duty in tort exists. Further, defendants concede the existence of a duty to plaintiff. Accordingly, whether an independent duty in tort also arises by operation of MCL 554.139 is irrelevant. Instead, our common-law rules and any

---

[7] MCL 554.139 provides:

(1) In every lease or license of residential premises, the lessor or licensor covenants: (a) That the premises and all common areas are fit for the use intended by the parties.

(b) To keep the premises in reasonable repair during the term of the lease or license, and to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located, except when the disrepair or violation of the applicable health or safety laws has been caused by the tenants wilful or irresponsible conduct or lack of conduct.

(2) The parties to the lease or license may modify the obligations imposed by this section where the lease or license has a current term of at least 1 year.

(3) The provisions of this section shall be liberally construed, and the privilege of a prospective lessee or licensee to inspect the premises before concluding a lease or license shall not defeat his right to have the benefit of the covenants established herein.

applicable statutory provisions[8] are important in determining the scope of defendant's duty, not its existence.

V

The next issue raised by the Supreme Court is "if [a duty in tort exists], whether defendants can avoid tort liability arising from MCL 554.139 by relying on the open and obvious doctrine."

As previously noted, tenants are invitees of their landlords. *Stanley, supra.* Further, the open and obvious doctrine applies to the duty of an invitor to an invitee. *Riddle, supra.* While we conclude the open and obvious doctrine may be raised by defendants, we hold that under the facts of the present case it is not applicable because a question of fact exists whether the unguarded rooftop porch was unreasonably dangerous despite being open and obvious.

VI

Finally, the Supreme Court asks "whether defendants were entitled to summary disposition on their alternate theory that they were 'landlords out of possession,' see, e.g., *Wallington v Carry,* 80 Mich App 248 [263 NW2d 338] (1977)." We hold that they are not. *Wallington* was a decision of our Court that applied the law of the state of Michigan, as it existed before *Mobil Oil, supra.* In *Mobil Oil,* our Supreme Court adopted 2 Restatement Torts, 2d, § 357 and expressly overruled the prior limitations of landlord

---

[8] See, generally, *Klanseck v Anderson Sales & Service, Inc,* 426 Mich 78; 393 NW2d 356 (1986).

liability as set forth in *Kuyk v Green*, 219 Mich 423; 189 NW 25 (1922), *Awad v McColgan*, 357 Mich 386; 98 NW2d 571 (1959), and *Huey v Barton*, 328 Mich 584; 44 NW2d 132 (1950). This now overruled line of authority was well summarized in *Lipsitz v Schechter*, 377 Mich 685, 687; 142 NW2d 1 (1966):

> At common law, a landlord's duty depends upon the facts and circumstances of each case. The element of control is of prime importance. *Huey v Barton*, 328 Mich 584, 588; 52 CJS, Landlord and Tenant, § 427, p 100. The common-law duty is predicated upon the concept that a lease is equivalent to a sale. The lessor, absent agreement to the contrary, surrenders possession and holds only a reversionary interest. Under such circumstances, he is under no obligation to look after or keep in repair premises over which he has no control. Prosser, Torts (3d ed), § 63, pp 411, 412; Harkrider, Tort Liability of a Landlord, 26 Mich L Rev 260, 383.

Relying on the "landlords out of possession" limitation of liability set forth in *Lipsitz, supra, Huey, supra,* and *Kuyk, supra,* our Court in *Wallington, supra* at 249-250, stated:

> The general rule in Michigan, as the trial court correctly points out, is that in the absence of a statute requiring that a dwelling be kept in good repair by the owner or a special agreement under which an owner retains control of a dwelling occupied by a tenant, a landlord has no duty to inspect or repair rented premises. *Lipsitz v Schechter*, 377 Mich 685; 142 NW2d 1 (1966) . . . .

Because the "landlords out of possession" doctrine has been overruled by our Supreme Court, we refuse to affirm the grant of defendant's motion for summary disposition on this alternative ground.

Reversed and remanded for further proceedings. We do not retain jurisdiction.