# STATE OF MICHIGAN

# COURT OF APPEALS

---

STEPHANIE SHERMAN, KAYLA ROLLEND,
AMANDA ROLLEND, by Next Friend JACOB
MARCINIAK, and EMILY ROLLEND, by Next
Friend JACOB MARCINIAK,

      Plaintiffs-Appellants,

v

ISRAEL BROS, INC.,

      Defendant-Appellee.

UNPUBLISHED
May 24, 2018

No.  333514
Macomb Circuit Court
LC No.  2015-000040-NO

---

Before:  RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

Plaintiffs appeal by right the trial court's order granting summary disposition in favor of defendant under MCR 2.116(C)(10) (no genuine issue of material fact).  We reverse and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from a carbon monoxide leak that occurred on August 26, 2013 in a house leased by defendant to Stephanie Sherman and her then-boyfriend, Les Tanner.  Sherman and Tanner lived in the home with Sherman's three children, Kayla, Amanda, and Emily.  Sherman testified at her deposition that she was "sick all day" on the day in question.  That evening, Sherman believed that she smelled natural gas, and told Amanda and Kayla to leave the house.[1]  She then called Semco Energy, her natural gas provider, and reported that she believed there was a gas leak in the house.

A worker from Semco came to the house.  According to Sherman, the worker used a testing device and stated that there was a high level of carbon monoxide in the house.  Sherman testified that the worker identified the source of the carbon monoxide as the hot water tank in the

---

[1] Sherman testified that she told her "kids to get out of the house."  Kayla clarified during her deposition that Emily was not at the house that day.

basement. Sherman further testified that she was informed by the worker that the water tank was "in very poor condition" and that "the duct work wasn't even together," as it was in "pieces" on the basement floor. Sherman denied ever seeing the condition of the duct work in the house's basement between September 2009, when she moved into the house, and August 26, 2013, despite stating that she had periodically entered the basement. Eventually, the worker called the fire department, and the fire department placed fans in the doorways to remove the carbon monoxide from the house.

Sherman testified that she informed Joe Israel (Joe) of defendant Israel Bros, Inc. of the situation on either August 27 or 28, and that Joe told her he would come to the house to fix the problem with the "bad water tank and duct work." However, Joe did not come over that evening, and Sherman ultimately paid a third party to repair the water tank. Plaintiffs ceased paying rent on the property after August 26. In October 2013, defendants filed suit in the district court for nonpayment of rent. Sherman and Tanner filed a counterclaim in five counts, essentially alleging negligence, breach of statutory duties, and retaliatory eviction. The district court removed the counterclaim to the circuit court. Plaintiffs filed a First Amended Complaint[2] in the circuit court, alleging two claims against defendant: (1) that defendant had breached its duty to repair and maintain the house under MCL 554.139, because those statutory duties were incorporated into defendant's lease with Sherman and Tanner, and (2) that defendant had negligently failed to maintain the premises, resulting in the carbon monoxide leak.

After discovery, defendant moved for summary disposition, arguing that it did not have actual or constructive notice regarding the condition of the water tank or ductwork, or of the presence of carbon monoxide in the home, before August 26, 2013. The trial court granted defendant's motion.

This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). "A motion for summary disposition under MCR 2.116(C)(10) tests the factual support of the plaintiff's claim and should be granted, as a matter of law, if no genuine issue of any material fact exists to warrant a trial." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 596-597; 865 NW2d 915 (2014), citing *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). "When evaluating a motion for summary disposition under MCR 2.116(C)(10), 'a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion.' " *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016), citing *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). " 'Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving

---

[2] The First Amended Complaint no longer listed Tanner as a party, and instead added Kayla and Emily's Next Friend as additional plaintiffs.

party is entitled to judgment as a matter of law.' " *Innovation Ventures*, 499 Mich at 507, citing *Maiden*, 461 Mich at 120.

## III.  ANALYSIS

Plaintiffs argue that the trial court erred by granting defendant's motion for summary disposition on both their common law premises liability claim and their claim for liability under MCL 554.139, because genuine issues of material fact existed regarding whether defendant had constructive notice of the hazardous conditions in the house.  We agree.

Generally, a claim of negligence, including premises liability, may be maintained only if a defendant had a legal duty to adhere "to a particular standard of conduct in order to protect others against unreasonable risks of harm."  *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992).  "It is well settled in Michigan that a premises owner must maintain his or her property in a reasonably safe condition and has a duty to exercise due care to protect invitees from conditions that might result in injury."  *Id*. at 90-91, citing *Beals v Walker*, 416 Mich 469, 480; 331 NW2d 700 (1982), and *Torma v Montgomery Ward & Co*, 336 Mich 468, 474; 58 NW2d 149 (1953).

Tenants are invitees of their landlord.  *Benton v Dart Prop, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006).  Residential landlords[3] owe their tenants a common-law duty to avoid negligent conduct.  See *Woodbury v Bruckner (On Remand)*, 248 Mich App 684, 697; 650 NW2d 343 (2001).  A landlord breaches its duty of care to tenants as invitees when it " 'knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect.' "  *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 8; 890 NW2d 344 (2016), quoting *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012).

MCL 554.139 provides "specific protection to lessees and licensees of residential property *in addition* to any protection provided by the common law."  *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).  A breach of the duty to maintain the premises under MCL 554.139(1)(a) or (b) is a breach of the lease between the parties and its remedy is a contract remedy; therefore a landlord may not escape liability under MCL 544.139 on the ground that the hazard was open and obvious.  *Id*.; see also *Woodbury v Buckner*, 467 Mich 922, 922; 658 NW2d 482 (2002).  Under MCL 554.139, the scope of a landlord's obligation includes the duty to keep the premises fit for the use intended by the parties and in reasonable repair during the term of the lease.  *Allison*, 481 Mich at 432.  The "premises" include everything within the boundaries of the leasehold apart from "common areas."  *Id*.  A landlord's

---

[3] The "modern rule" adopted in Michigan regarding a lessor's liability to a lessee for harm caused by a dangerous condition on the land makes no distinction between residential and commercial leases, and does not shield a landlord from liability once a tenant takes possession of the leased premises.  See *Mobil Oil Corp v Thorn*, 401 Mich 306, 312; 258 NW2d 30 (1977) (overruling previous cases holding that a "landlord out of possession" owes no further duty to a lessee once a lessee has taken possession of the premises).

statutory duty to keep the premises in reasonable repair during the term of the lease extends only to the repair of defects about which the landlord knew or should have known. *Evans v VanKleek*, 110 Mich App 798, 803; 314 NW2d 846 (1981); *Raatikka v Jones*, 81 Mich App 428, 430-431; 265 NW2d 360 (1978). This "does not impose a duty upon the landlord to inspect the premises on a regular basis to determine if any defects exist." *Raatika*, 81 Mich App at 430-431. However, a landlord has a duty "to repair any defects brought to [its] attention by the tenant or by [its] casual inspection of the premises," i.e., defects of which it had actual notice, or defects of which, due to the nature of the defect or the amount of time in which it has existed on the premises, the landlord can be imputed constructive notice. *Id.*

In this case, plaintiffs do not assert that defendant had actual notice of the defect. Rather, they claim that the nature of the defect was such that defendant should be deemed to have had constructive knowledge of it.[4] A premises owner's constructive notice of a defective condition on the land may be found where that condition " 'is of such a character or has existed a sufficient length of time that he should have knowledge of it.' " *Lowrey*, 500 Mich at 10; quoting *Carpenter v Herpolsheimer's Co*, 278 Mich 697, 698; 271 NW 575 (1937). "Constructive notice may arise not only from the passage of time itself, but also from the type of condition involved, or from a combination of the two elements." *Banks v Exxon Mobil Corp*, 477 Mich 983, 983-984; 725 NW2d 455 (2007), citing *Kroll v Katz*, 374 Mich 364, 372; 132 NW2d 27 (1965). A plaintiff may demonstrate the existence of constructive notice by providing evidence relating to when the dangerous condition arose, or evidence relating to how a hazardous condition was "of such a character that the defendant should have had notice of it." *Lowrey*, 500 Mich at 12, citing *Goldsmith v Cody*, 351 Mich 380, 389; 88 NW2d 268 (1958). A landlord has a duty to his invitee tenants to inspect the premises and either warn of any discovered hazards or make any necessary repairs. *Grandberry-Lovette v Garascia*, 303 Mich App 566, 573; 844 NW2d 178 (2014), abrogated in part on other grounds by *Lowrey*, 500 Mich at 10 n 1. However, a defendant landlord is not required to present evidence that it conducted regular or routine inspections in order to avoid summary disposition. *Lowrey*, 500 Mich at 10.

Plaintiffs contend that summary disposition was improper because they presented evidence raising a genuine issue of material of fact regarding whether defendant could have discovered, on casual inspection, that the water tank's "vent connector" was corroded, and that defendant therefore should have been aware of the risk of a carbon monoxide leak. We agree. Plaintiffs presented the trial court with photographs taken of the water tank following the August 26, 2013 incident, asserting that the photographs demonstrate that the defective nature of the water tank and duct work would have been noticed by defendant during a casual inspection.

---

[4] Because our starting point for analyzing both plaintiffs' claim for premises liability and its claim for a violation of MCL 554.139 is notice to the defendant, *Kroll v Katz*, 374 Mich 364, 373; 132 NW2d 27 (1965), *Evans v Van Kleek*, 110 Mich App 798, 803; 314 NW2d 486 (1981), and because the analysis under either legal theory is the same, we need not separately discuss plaintiffs' claims under the two legal theories. We also do not reach the issue of whether the hazard was open and obvious, because that issue was not decided by the trial court, see *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001).

Plaintiffs also submitted the affidavit of their expert witness, James Partridge. Partridge, a professional engineer with 45 years' experience "in the engineering and design of buildings' heating, ventilating, and air-conditioning (HVAC) systems," opined that the carbon monoxide leak had occurred because an insufficient oxygen supply had caused incomplete combustion of the natural gas delivered to the water tank. He further opined that the water tank's "galvanized steel vent connector" had collapsed from corrosion, and that "[t]he corrosion on the galvanized steel would have been visible upon casual inspection long before August 26, 2013." Partridge's affidavit also stated that "flue gases" had escaped "through the holes in the galvanized pipe and accumulated in the basement," resulting "in insufficient oxygen being available to ensure complete combustion," and further causing the house's basement and first floor to fill with carbon monoxide.

Taking Partridge's affidavit and the photographs in the light most favorable to plaintiffs, see *Innovation Ventures*, 499 Mich at 507, plaintiffs provided evidence that the water tank's vent connector was corroded, and that the corrosion did not occur suddenly. It would be reasonable for a fact-finder to infer that the corrosion of the vent connector would have been readily apparent long before August 26, 2013, and that, as a result of the deterioration and lack of maintenance over time, plaintiffs were exposed to significant levels of carbon monoxide well before August 26, 2013. It would therefore be reasonable to conclude, based on the record evidence, that the unsafe condition had developed over time and was of such a character that, had defendant exercised reasonable care as a landlord, it should have been aware of the defect and its attendant risks. *Grandberry*, 303 Mich App at 570.

Further, we reject (as did the trial court) defendant's argument that Sherman and Tanner remained solely responsible for repairs to the house even after they became holdover tenants. Plaintiffs moved into the house in September 2009, and resided in the house under a "holdover" lease at the time of the incident in 2013. For the first year of the lease, Sherman and Tanner were indisputably responsible for repairs to the premises under the lease agreement, and that defendant was not responsible for repairs. After they became holdover tenants, however, and although the parties may have believed that Sherman and Tanner continued to bear the sole duty to keep the premises in good repair, that duty in fact reverted to defendant. MCL 554.139(2) permits modification of a landlord's common-law duty to keep the premises in reasonable repair only if a lease has a *current* term of at least one year. When plaintiffs became holdover tenants with recurring one-month lease terms, the provision of the lease making plaintiffs solely responsible for repairs to the premises became ineffective.

In sum, and viewed in the light most favorable to plaintiffs, the evidence reflected that the vent connector to the water tank was visibly corroded and had been for at least some period of time, exposing plaintiffs to increased levels of carbon monoxide for a significant period of time before the events of August 26, 2013. Plaintiffs met their burden of showing that genuine issues of material fact existed concerning whether defendant had constructive notice of the defective condition and its attendant risks of a carbon monoxide leak, based on either the nature of the defect or the length of time it had existed. The trial court therefore erred by granting summary disposition in favor of defendant on plaintiffs' premises liability and statutory claims. MCR 2.116(C)(10); *Maiden*, 461 Mich at 120.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola